76 A.3d 962

Paul B. DeWOLFE, in his official capacity as the Public Defender for the State of Maryland, et al.

v.

Quinton RICHMOND, et al.

No. 34, Sept. Term, 2011.

Court of Appeals of Maryland.

Jan. 4, 2012.

Julia Doyle Bernhardt, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, and William F. Brockman, Deputy Solicitor General, Baltimore, MD), on brief, for Appellants/Cross–Appellees.

A. Stephen Hut, Jr. (Aron B. Goetzl, and Ashley Bashur of Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC), on brief, for Appellants/Cross–Appellees.

Michael Schatzow (Mitchell Y. Mirviss of Venable LLP, Baltimore, MD; Douglas L. Colbert of Maryland School of Law Access to Justice Clinic, Baltimore, MD), on brief, for Appellees/Cross–Appellants.

Jessica Weber, Esq., Thomas Davies, Francis D. Murnaghan, Jr. Appellate Advocacy Fellow, Baltimore, MD, brief of Public Justice Center, International Cure, Alternative Directions, Inc., and Justice Policy Institute as Amici Curiae for Appellants.

Daniel P. Westman, Esq., Morrison & Foerster LLP, McLean, VA, brief of Society of American Law Teachers as Amici Curiae for Appellees.

Howard Schiffman, Esq., Andrew P.C. Wright, Esq., Schulte Roth & Zabel LLP, Washington, DC, Daniel L. Greenberg, Esq., Ronald B. Risdon, Esq., Brian C. Tong, Esq., Schulte Roth & Zabel LLP, New York, NY, brief of the Leadership Conference on Civil and Human Rights, Amicus Curiae, in Support of Appellees and Affirmance of the Order of the Circuit Court.

Christina M. Gattuso, Esq., Kilpatrick Townsend and Stockton LLP, Washington, DC, Gia L. Cincone, Esq., Kilpatrick Townsend and Stockton LLP, San Francisco, CA, brief of Amici Curiae National Association of Criminal Defense Lawyers, the American Civil Liberties Union, the American Civil Liberties Union of Maryland, the Brennan Center for Justice at New York University Law School, the Center for Constitutional Rights, and the National Legal Aid and Defender Association in Support of Appellees.

A.J. Bellido De Luna, Esq., Michael Pinard, Esq., Baltimore, MD, brief of Amici Curiae Faculty Members of the University of Baltimore School of Law and the University of Maryland Francis King Carey School of Law in Support of Appellees.

Joshua I. Civin, Esq., Washington, DC, John Payton, Esq., Debo P. Adegbile, Esq., Christina Swarns, Esq., Johanna B. Steinberg, Esq., NAACP Legal Defense and Educational Fund, Inc., New York, NY, Steven F. Barley, Esq., Andrea W. Trento, Esq., Lindsay S. Goldberg, Esq., Hogan Lovells US, LLP, Baltimore, MD, for Amicus Curiae NAACP Legal Defense and Educational Fund, Inc. in Support of Appellees.

Baruch Weiss, Esq., Dirk C. Phillips, Esq., Jeremy W. Hockberg, Esq., Rubina S. Madni, Esq., Daniel M. Friedman, Esq., Ingrid A. Epperly, Esq., Arnold & Porter LLP, Washington, DC, William T. Robinson III, Esq., American Bar Association, brief of the American Bar Association as Amicus Curiae in Support of Appellees.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and JOHN C. ELDRIDGE, (Retired, Specially Assigned), JJ.

BARBERA, J.

When an individual is arrested, he or she must go before a judicial officer for an initial appearance, pursuant to Maryland Rule 4–213(a). The judicial officer, who in all instances relevant to the matter *sub judice* is a District Court Commissioner ("Commissioner")[1], has a number of duties at the initial appearance, among which is to comply with the pretrial release provisions of Maryland Rule 4–216. That rule requires the Commissioner to determine whether there was probable cause for the arrest and, if so, whether the defendant should

---

[1]. A Commissioner is defined in Maryland as a "judicial officer," *see* Maryland Rule 4–102(f), but need not be a lawyer, *see* Maryland Code (1974, 2006 Rep. Vol., 2010 Supp.), § 2–607(b) of the Courts and Judicial Proceedings Article. For a discussion of the origins of Commissioners in Maryland, see *State v. Smith*, 305 Md. 489, 501–05, 505 A.2d 511, 517–19, *cert. denied*, 476 U.S. 1186, 106 S.Ct. 2925, 91 L.Ed.2d 552 (1986).

be released on his or her own recognizance, on bail, or not at all.

We are asked in this appeal whether an indigent defendant is entitled to appointed counsel when a Commissioner makes the Rule 4–216 bail determination. We hold, for the reasons that follow, that an indigent defendant is entitled to such representation, under Maryland's Public Defender statute, Maryland Code (2001, 2008 Repl.Vol.), §§ 16–101 through 16–403 of the Criminal Procedure Article (hereafter "Public Defender Act" or "Act").[2]

## I.

This case comes to us from the decision of the Circuit Court for Baltimore City granting summary judgment for the Plaintiffs,[3] entering a declaratory judgment, and denying the Plaintiffs' request for an injunction to enforce the rights declared. The Plaintiffs sought a declaration that they and the class of indigent persons they represent[4] have the right, under the federal and state constitutions and the Public Defender Act, to be represented by the Public Defender at bail hearings, which are conducted as part of the initial appearance before Com-

---

**2.** When this action was initiated, the Public Defender Act was codified at Maryland Code (1957, 2003 Repl.Vol., 2007 Supp.), Article 27A. Effective October 1, 2008, the General Assembly re-codified the Public Defender Act, without substantive change, as Maryland Code (2001, 2008 Repl.Vol.), §§ 16–101 through 16–403 of the Criminal Procedure Article. *See* 2008 Md. Laws ch. 15 § 2. There have been no amendments since recodification that affect our analysis here. We therefore shall refer to the current version of the Act.

**3.** We shall summarize in greater detail, *infra*, the complex procedural history of this case. To avoid confusion, throughout the opinion we shall refer to the parties by their respective designations in the Circuit Court: Appellant/Cross–Appellee Public Defender Paul DeWolfe shall be referred to as "Public Defender," the remaining Appellants/Cross–Appellees, as "District Court Defendants"; and Appellees/Cross–Appellants, as "Plaintiffs."

**4.** The Plaintiffs represent the class of "[a]ll indigent persons arrested, detained at Central Booking, brought before a Commissioner for initial bail hearings, and denied representation by counsel at the initial bail hearings, presently and in the future."

missioners at the Baltimore City Booking and Intake Center ("Central Booking Jail"). To assist in understanding the parties' respective arguments and the issues we must decide, we describe at the outset what occurs at the initial appearance before the Commissioner.

The duties of the Commissioner at the initial appearance are governed by Maryland Code (1974, 2006 Rep. Vol., 2010 Supp.), § 2–607(c) of the Courts and Judicial Proceedings Article ("C.J.") and Maryland Rules 4–213(a) and 4–216. The Commissioner must inform the defendant of the charge and allowable penalties; provide the defendant a copy of the statement of charges, if the defendant does not have one and one is available; advise the defendant of the right to counsel; advise the defendant, when it is relevant, of the right to a preliminary hearing; and comply with the pretrial release provisions of Rule 4–216. Md. Rule 4–213(a); *see* C.J. § 2–607(c)(1)–(2). The pretrial release provisions of Rule 4–216 require the Commissioner, in those instances when the defendant has been arrested without a warrant, to determine whether the arrest was supported by probable cause. If the arrest was not supported by probable cause, then the Commissioner "shall release the defendant on personal recognizance, with no other conditions of release." Md. Rule 4–216(a).

Of particular relevance to this case is what follows if the Commissioner determines that the arrest was supported by probable cause. In that instance, the Commissioner must comply with the provisions of Rule 4–216(d). That subsection of the Rule requires the Commissioner to determine whether the defendant is eligible to be, and should be, released on his or her recognizance or whether the case requires bail, pending trial. In that process, the Commissioner considers a number of factors that are set forth in Rule 4–216(d).[5] If the Commissioner "determines that the defendant should be released other than on personal recognizance without any additional

---

5. Rule 4–216(d)(1) requires the Commissioner to consider "the following information, to the extent available":

conditions imposed," then the Commissioner "shall impose on the defendant the least onerous condition or combination of conditions of release set out in section (e) . . . that will reasonably": "ensure the appearance of the defendant as required"; "protect the safety of the alleged victim"; and "ensure that the defendant will not pose a danger to another person or to the community." Rule 4–216(d)(3).

Rule 4–216(d)(4) further requires the Commissioner to "advise the defendant in writing or on the record of the conditions of release imposed and of the consequences of a violation of any condition." In addition, "[w]hen bail is required, the judicial officer shall state in writing or on the record the amount and any terms of the bail." *Id.*

The initial appearance before a Commissioner in Baltimore City is not conducted in a courtroom. According to the Plaintiffs, the initial appearance is not open to the public and is not recorded.[6] The Plaintiffs report that the event takes

---

(A) the nature and circumstances of the offense charged, the nature of the evidence against the defendant, and the potential sentence upon conviction;

(B) the defendant's prior record of appearance at court proceedings or flight to avoid prosecution or failure to appear at court proceedings;

(C) the defendant's family ties, employment status and history, financial resources, reputation, character and mental condition, length of residence in the community, and length of residence in this State;

(D) any recommendation of an agency that conducts pretrial release investigations;

(E) any recommendation of the State's Attorney;

(F) any information presented by the defendant or defendant's counsel;

(G) the danger of the defendant to the alleged victim, another person, or the community;

(H) the danger of the defendant to himself or herself; and

(I) any other factor bearing on the risk of a wilful failure to appear and the safety of the alleged victim, another person, or the community, including all prior convictions and any prior adjudications of delinquency that occurred within three years of the date the defendant is charged as an adult.

6. Neither the District Court Defendants nor the Public Defender dispute the Plaintiffs' description of where and how the typical initial appear-

place in a "tiny narrow booth" at Central Booking Jail. A plexiglass wall separates the arrestee and the Commissioner, and the two communicate through a speaker system. According to the Plaintiffs, "public defenders never are present" at the initial appearance, notwithstanding that many arrestees are indigent. The Plaintiffs report:

> Theoretically, private lawyers may participate, but, in practice, security concerns, lack of personnel for escorts, cramped quarters, and procedural issues at Central Booking make private representation rare. In contrast, by Rule and by practice, the commissioner may receive *ex parte* recommendations for bail from the State's Attorney, without any public record of such contact. The State's Attorney staffs a 24–hour war room in Central Booking for this purpose.

The Plaintiffs further report that, because the initial hearings are "not open to the public ... [and are] not transcribed or recorded," "it [is] impossible to review what a Commissioner or arrestee said or to understand the basis for the ruling." Moreover, Commissioners "are not required to give *Miranda* warnings and thus do not." When commissioners "ask about residence, employment, family, community ties, prior record, and, frequently, the charges[,] ... [a]rrestees are expected to answer. Most do, not knowing that the information may be recorded in a closed envelope for use against them by judges and prosecutors. They are not informed whether a prosecutor has *ex parte* contact with a commissioner."

Whenever the Commissioner does not release a defendant following the initial appearance, the defendant is presented to a District Court judge for a bail review hearing "immediately ... if the court is then in session, or if not, at the next session

---

ance occurs before Commissioners at Central Booking Jail. We therefore accept the Plaintiffs' description for purposes of this opinion. *See Md. Agric. Land Pres. Found. v. Claggett*, 412 Md. 45, 61, 985 A.2d 565, 574–75 (2009) (stating that, upon review of the declaratory judgment entered after a grant of summary judgment, we determine, if there is no genuine dispute of fact material to the declaration, whether "that declaration was correct as a matter of law" (quoting *S. Easton Neighborhood Ass'n v. Town of Easton*, 387 Md. 468, 487, 876 A.2d 58, 70 (2005) (quotation mark omitted))).

of the court." Md. Rule 4–216(f). The Plaintiffs also inform us that, when a warrant is served with a "preset" bail issued after a defendant fails to appear in violation of a summons, the Commissioner "typically declines to modify the bail previously set *in absentia* or to consider the defendant's explanation for the [Failure to Appear]." Furthermore, "[t]hat bail remains in effect until a bail review hearing, where most judges defer to a colleague's preset amount." [7]

### The Lawsuit

On November 13, 2006, the Plaintiffs filed in the Circuit Court for Baltimore City a class action complaint (later amended) seeking injunctive and declaratory relief. They sought a declaratory judgment that: (1) the initial bail hearing before the Commissioner is a stage of the criminal proceeding, entitling them to representation under § 16–204(b)(2) of the Public Defender Act, which states that "[r]epresentation shall be provided ... in all stages of a proceeding listed in paragraph (1) of this subsection [8], including, in criminal proceed-

---

7. The record supports that claim. The Plaintiffs attached to their Memorandum in Opposition to Motion to Dismiss and in Support of Cross–Motion for Partial Summary judgment, filed in 2007, a report commissioned by the Honorable Robert M. Bell, Chief Judge of the Court of Appeals, and published by the Abell Foundation. The report, entitled "The Pretrial Release Project: A Study of Maryland's Pretrial Release and Bail System" (hereafter "Abell Pretrial Release Project Report"), was released in 2001. It includes the finding that District Court judges in the five-county sample group (Baltimore City, Baltimore County, Frederick County, Harford County, and Prince George's County), "released [at the bail review hearing] about one of four detainees on personal recognizance (24.5%) and lowered bail for one in four individuals (27%). In nearly half the cases, judges maintained the prior bail conditions. It was relatively rare for a judge to increase the amount." Report at 32 (footnote omitted).

The report also finds, upon surveying District Court Commissioners and reviewing bail review proceedings, that "most judicial officers decide whether to order release on recognizance or a financial bail without having essential information about the person's employment status, family and community ties, and ability to afford bail." Report at iii.

8. Paragraph (1) provides for representation in the following proceedings, *inter alia:* "(i) a criminal or juvenile proceeding in which a

ings, custody, interrogation, preliminary hearing, arraignment, trial, and appeal"; (2) they are entitled to counsel under the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights [9] because the initial bail hearing is an adversary proceeding and/or a "critical stage" of a criminal prosecution, as that phrase is understood in Sixth Amendment parlance [10]; (3) the initial bail hearing implicates the Plaintiffs' fundamental right to liberty under the Due Process Clause of the Fourteenth Amendment and Article 24 [11]; and (4) they were denied their right to counsel. The Plaintiffs also sought an injunction enjoining the Defendants from violating the Plaintiffs' right to representa-

---

defendant or party is alleged to have committed a serious offense; ... (iv) any other proceeding in which confinement under a judicial commitment of an individual in a public or private institution may result." § 16–204(b)(1).

9. The Sixth Amendment to the Constitution of the United States provides: "In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." The right is applicable to the states through the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335, 342, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Article 21 of the Maryland Declaration of Rights declares: "That in all criminal prosecutions, every man hath a right ... to be allowed counsel."

10. The Supreme Court has described "critical stages as proceedings between an individual and agents of the State (whether 'formal or informal, in court or out') that amount to 'trial-like confrontations,' at which counsel would help the accused 'in coping with legal problems or ... meeting his adversary.' " *Rothgery v. Gillespie County*, 554 U.S. 191, 212 n. 16, 128 S.Ct. 2578, 171 L.Ed.2d 366 (2008) (citations omitted) (omission in original).

11. The Due Process Clause of the Fourteenth Amendment to the Constitution of the United States provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." Article 24 of the Maryland Declaration of Rights provides: "That no man ought to be taken or imprisoned ... or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." "Under certain circumstances, the requirements of due process include a right to counsel, with appointed counsel for indigents, in civil cases or other proceedings not constituting critical stages of criminal trials." *Rutherford v. Rutherford*, 296 Md. 347, 358, 464 A.2d 228, 234 (1983) (citing cases).

tion by the Office of the Public Defender at initial bail hearings in Baltimore City.

Each named Plaintiff [12] was arrested for a crime that qualifies as a "serious offense," as that term is defined in the Public Defender Statute, § 16–101(h)(1)–(4).[13]  Each Plaintiff was detained at the Central Booking Jail and, without counsel present, was brought before a Commissioner for the purpose of determining eligibility for pretrial release.  Each Plaintiff informed the Commissioner that he or she could not afford an attorney and requested an attorney to represent him or her at the initial appearance.  On each occasion, the Commissioner refused to appoint an attorney and, ultimately, set bail for the Plaintiff.[14]

The Plaintiffs named as defendants the District Court of Maryland;  the Chief Judge of the District Court of Maryland, the Coordinator of Commissioner Activity for the Maryland District Court Commissioners;  the Administrative Judge of

---

12. The named Plaintiffs are Quinton Richmond, Jerome Jett, Glenn Callaway, Myron Singleton, Timothy Wright, Keith Wilds, Michael LaGrasse, Ralph Steele, Laura Baker, Erich Lewis, and Nathaniel Shivers.

13. "Serious offense" is defined in § 16–101(h)(1)–(4) as "a felony"; "a misdemeanor or offense punishable by confinement for more than 3 months or a fine of more than $500"; "a delinquent act that would be a serious offense if committed by an adult"; or "an offense in which, in the opinion of the court, the complexity of the matter or the youth, inexperience, or mental capacity of the accused requires representation of the accused by an attorney."

14. Several of the named Plaintiffs represent the subclass of persons arrested on a warrant for "failure to appear" that was signed by a District Court judge who preset the bail for execution of the warrant. *See* Md. Rule 4–216(j) (providing that "[a] court may issue a bench warrant for the arrest of a defendant" who has violated his or her terms of release); Md. Rule 1–361(b)(2) (providing for an appearance before a judicial officer, following arrest on the bench warrant, who "shall determine the person's eligibility for release, establish any conditions of release, and direct how the person shall be brought before the judge who issued the warrant").  The Plaintiffs in the subclass alleged that, at each initial appearance, the Commissioner did not make an individualized assessment regarding bail and, instead, deferred to the preset bail amount.

the District Court for Baltimore City; the Administrative Commissioner for Baltimore City; and the Commissioners of the District Court in Baltimore City, individually and collectively in their official capacities as District Court Commissioners. The parties later agreed that the District Court should be dismissed from the case because it was not a proper party.

The parties filed cross-motions for summary judgment. After a hearing on the motions, at which the Circuit Court certified the class, the court issued a written order granting summary judgment in favor of the District Court Defendants.

The Plaintiffs noted a timely appeal to the Court of Special Appeals. While the case was pending in that court, we issued a writ of certiorari on our initiative. *Richmond v. Dist. Court,* 405 Md. 348, 952 A.2d 224 (2008). Subsequent to briefing and oral argument, we vacated the order of the Circuit Court and remanded the case with the direction that it be dismissed if the Plaintiffs failed to amend their complaint to assert claims against the Public Defender.

On remand, the Circuit Court conditionally denied the Plaintiffs' petition to certify the class and ordered dismissal of the complaint if the Public Defender was not joined as a defendant. The Plaintiffs amended the complaint to add the Public Defender as a defendant. The Public Defender filed a response to the cross-motions for summary judgment, originally filed in 2007. He argued that the Plaintiffs had "very strong constitutional and statutory claims," but the court should not order representation absent funding, and he asked the court to use its discretion to deny declaratory relief or to: (1) order a 6-to-9-month stay for an intergovernmental group to develop solutions; (2) bifurcate the case to add a remedy stage, at which the court could join "additional parties, including political actors" responsible for funding or exercise its "inherent power" to compel funding; (3) issue an injunction with "reform guidelines"; or (4) delay relief until funding is found.

The District Court Defendants moved to dismiss the complaint on the basis that the amended complaint failed to seek "coercive relief" from the Public Defender. At a hearing on

the motion to dismiss, the Circuit Court recertified the class and invited the Plaintiffs to amend their complaint orally, to add claims for relief against the Public Defender. The Plaintiffs did so, following which the court stated that it would regard the District Court Defendants' motion to dismiss as a motion for summary judgment.

The court then invited the Public Defender to address his response to the cross-motions for summary judgment. The Public Defender argued that the Plaintiffs' claims based on the Due Process Clause and the Public Defender Act "are well taken." He argued nevertheless that the court should defer ruling on the merits of the claims, to give him the time to resolve budgetary constraints that made it impracticable for the Public Defender's Office to provide counsel at the appearance before the Commissioner, while providing "responsible representation ... when it really matters," at trial and other critical stages of criminal proceedings. The hearing ended with the court informing the parties that it intended to issue a written decision. The court granted the parties leave to file post-hearing memoranda and advised them to "assume for the purposes of our understanding that the Court does find that the appearance before a judicial officer, i.e., the commissioner, initiates the adversarial responsibility of the right to counsel."

The Plaintiffs thereafter formally amended their complaint and filed a renewed (and amended) motion for summary judgment. The amended complaint sought additional injunctive relief from the Public Defender, specifically requesting the court to "[e]nter[ ] an affirmative injunction directing the Public Defender to assign the district public defender for Baltimore City, an attorney from the district Office of the Public Defender for Baltimore City, or a panel attorney to represent indigent defendants at initial bail hearings and thereafter."

On September 30, 2010, the Circuit Court issued an Order and accompanying Memorandum and Opinion, ruling that presentment to a Commissioner is a critical stage of a criminal prosecution and therefore indigent arrestees in Baltimore City have a right under the Sixth Amendment and Article 21 to be

represented by appointed counsel.  The court cited as support for that ruling *Rothgery v. Gillespie County,* 554 U.S. 191, 128 S.Ct. 2578, 171 L.Ed.2d 366 (2008), which was decided after the initial proceedings in the Circuit Court.  The court further ruled that the Plaintiffs were entitled to counsel under the Public Defender Act, noting that the duty of representation under the Act extends beyond the requirements of the Sixth Amendment.  Finally, the court ruled that, "by denying Plaintiffs and those similarly situated any representation at the initial bail hearing, Defendants violated Plaintiffs' due process rights."  Based on those rulings, the Circuit Court denied the District Court Defendants' Motion to Dismiss (treating it as a motion for summary judgment) and granted the Plaintiffs' motion for summary judgment.  The Circuit Court issued an order staying the decision pending appellate review.  Both the Public Defender and the District Court Defendants noted timely appeals.

The District Court Defendants thereafter filed a motion requesting the court to enter clarifying orders, as no declaratory judgment had been entered and the Plaintiffs' request for injunctive relief had not been decided.  The Public Defender responded to that motion, agreeing that a separate order setting forth the terms of the court's declaratory judgment "seems appropriate."  The Public Defender disagreed, however, that the court should enter an order specifying the terms of any injunctive relief, and he asserted that the Plaintiffs should be deemed to have abandoned their claims for such relief.  By Order dated December 28, 2010, the Circuit Court granted the Plaintiffs declaratory relief in conformance with its earlier Memorandum and Opinion.

By separate Order of the same date, the Circuit Court denied without prejudice the Plaintiffs' request for injunctive relief.  The Plaintiffs then sent correspondence to the Circuit Court, requesting the court to amend the order denying injunctive relief "without prejudice," as the order might not constitute a "final" order for purposes of appellate review.[15]

---

15.  The Plaintiffs' concern about the finality of the Circuit Court's order was based on this Court's decision in *Miller & Smith at Quercus, LLC v.*

The Plaintiffs submitted two proposed orders, one awarding them the injunctive relief they requested and the other denying it. The Plaintiffs advised the court that they "do not object to denial of their request for injunctive relief at this time," but they asked the court to include in its order denying relief a proviso stating that, "[t]o the extent Plaintiffs may require injunctive relief in the future," they could seek that relief in subsequent proceedings by making a supplementary petition, under C.J. § 3–412[16]. In that letter, the Plaintiffs also asserted that the denial of injunctive relief would not erect a *res judicata* bar and C.J. § 3–412 expressly allows further relief based on a declaratory judgment.

The District Court Defendants did not oppose the modification of the Order denying injunctive relief, but opposed the Plaintiffs' proposed proviso. They asserted that the additional language would create the impression that the parties contemplated further action in the Circuit Court and, therefore, there would be no final judgment. The District Court Defendants also took the position that *res judicata* would apply to future requests for injunctive relief. According to the Defendants, although declaratory judgment actions are an exception to traditional *res judicata* principles, the exception does not apply· where the declaratory judgment action additionally sought injunctive relief. The Public Defender did not oppose amending the order to deny injunctive relief outright, noting that the Plaintiffs "would then have the option to seek further relief, if necessary, under [C.J.] § 3–412 at a later time if

---

*Casey PMN, LLC,* 412 Md. 230, 987 A.2d 1 (2010). We do not opine herein whether the original order denying injunctive relief without prejudice would constitute a final judgment. We merely note, in that regard, *Moore v. Pomory,* 329 Md. 428, 432, 620 A.2d 323, 325 (1993) (holding that a dismissal without prejudice is a final judgment, though it does not have *res judicata* effect).

**16.** Section 3–412 of the Maryland Uniform Declaratory Judgments Act, codified at Maryland Code (1974, 2006 Rep. Vol.), §§ 3–401 through 3–415 of the Courts and Judicial Proceedings Article, entitled "Supplementary relief," provides, in pertinent part: "(a) *Further relief.*—Further relief based on a declaratory judgment or decree may be granted if necessary or proper."

Defendants were to fail to comply with the declarations after appeals are resolved and the stay is lifted." The Circuit Court issued an Amended Order entered February 25, 2011, denying the Plaintiffs' request for injunctive relief, and omitting the proviso requested by the Plaintiffs.

The District Court Defendants filed another timely notice of appeal to "remove any uncertainty about whether the notice they filed on November 1, 2010, is effective in light of the Court's later revisions." The Public Defender then filed his own timely Renewed Notice of Appeal. The Plaintiffs, in turn, filed a timely Notice of Cross–Appeal.

The Plaintiffs then filed a Petition for a Writ of Certiorari seeking this Court's consideration of the judgment prior to review by the Court of Special Appeals. The Plaintiffs presented the following questions for review:

1. Do indigent defendants have a right to counsel at initial bail hearings before district court commissioners under Maryland's Public Defender Act?

2. Do indigent defendants have a right to counsel at initial bail hearings under the Sixth Amendment and Article 21 of the Declaration of Rights?

3. Do indigent defendants have a right to counsel at initial bail hearings under Maryland or federal guarantees of due process?

4. Even if no right to counsel exists under Issues 1 through 3, do indigent defendants have a due process right to counsel at initial bail hearings when commissioners impose bail "preset" by the district court *in absentia?*

5. Did the circuit court abuse its discretion by granting the Class declaratory relief in accord with its findings that defendants are violating the Class's statutory and constitutional rights?

6. Does the circuit court's denial of [the Plaintiffs'] request for an injunction establish a *res judicata* bar against a future request to enjoin future violations to effectuate the court's declaratory judgment, and, if so, did the court err, either by denying the injunction request without reserving

[the Plaintiffs'] right to seek injunctive relief in the future or by failing to order an injunction that would be stayed pending appeal?

The Public Defender filed a Conditional Cross–Petition for a Writ of Certiorari, presenting the following question:

In light of the uncontested facts presented by the Public Defender that providing counsel at initial bail hearings would render the Office of the Public Defender unable, within its currently available resources, to provide representation at these proceedings while still meeting its obligation to provide effective, competent, and diligent representation to indigent defendants, did the circuit court err in issuing the declaration without in any way addressing remedy and how this undisputed funding shortfall might be practicably addressed?

We granted certiorari to address these important questions. *DeWolfe v. Richmond,* 420 Md. 81, 21 A.3d 1063 (2011).

For the reasons that follow, we answer "yes" to the first question presented by the Plaintiffs and hold that they enjoy a right under the Public Defender Act to be represented at any bail hearing conducted before a Commissioner. We need not and therefore do not address the federal and state constitutional claims presented by the Plaintiffs' second, third and fourth questions. *See McCarter v. State,* 363 Md. 705, 712, 770 A.2d 195, 199 (2001) (stating that "this Court adheres to the 'established principle that a court will not decide a constitutional issue when a case can properly be disposed of on a non-constitutional ground'") (quoting *Baltimore Sun Co. v. Mayor of Baltimore,* 359 Md. 653, 659, 755 A.2d 1130, 1133–34 (2000) (citation omitted)). We further hold, in answer to the Plaintiffs' fifth question, that the Circuit Court did not err in declaring the Plaintiffs' entitlement to representation of appointed counsel at the bail hearing before a Commissioner. As for the related question presented by the Public Defender's cross-petition, we hold that the Circuit Court did not err in issuing its declaration without consideration of the costs attendant to the rights declared. Finally, in answer to the last

of the Plaintiffs' questions, we hold that the Circuit Court's denial of the Plaintiffs' request for injunctive relief does not erect a *res judicata* bar to the Plaintiffs' seeking future injunctive relief, as may be necessary to enforce the right to counsel declared by the Circuit Court in its December 2010 order.

## II.

### A. *Right to Counsel*

■ We have said on more than one occasion that the right to counsel provided under the Public Defender Act is broader in scope than that granted under the Sixth Amendment.[17] *See McCarter*, 363 Md. at 713–14, 770 A.2d at 200, and cases cited therein. Section 16–204 of the Act outlines the scope of representation by the Public Defender and lists in subsection (b) the "Proceedings for which representation shall be provided." Subsection (b)(1) provides, in pertinent part:

Indigent defendants or parties shall be provided representation under this title in:

(i) a criminal or juvenile proceeding in which a defendant or party is alleged to have committed a serious offense;

(ii) a criminal or juvenile proceeding in which an attorney is constitutionally required to be present prior to presentment being made before a commissioner or judge;

(iii) a postconviction proceeding for which the defendant has a right to an attorney under Title 7 of this article;

(iv) any other proceeding in which confinement under a judicial commitment of an individual in a public or private institution may result;

(v) a proceeding involving children in need of assistance under § 3–813 of the Courts Article; or

---

**17.** For an historical perspective on the enactment of the Public Defender Act, see Judge Alan Wilner's opinion for the Court of Special Appeals in *Baldwin v. State*, 51 Md.App. 538, 546–52, 444 A.2d 1058, 1063–67 (1982).

    (vi) a family law proceeding under Title 5, Subtitle 3, Part II or Part III of the Family Law Article . . .

Subsection 16–204(b)(2) in turn provides: "Representation shall be provided to an indigent individual in all stages of a proceeding listed in paragraph (1) of this subsection, including, in criminal proceedings, custody, interrogation, preliminary hearing, arraignment, trial, and appeal." The Circuit Court agreed with the Plaintiffs and the Public Defender that, by its plain language, § 16–204(b) mandates public defender representation at the bail hearing that occurs as part of the initial appearance before a Commissioner. The District Court Defendants counter, as they did in the Circuit Court, that the Public Defender Act does not include within its mandate representation at the initial appearance before a Commissioner. They urge a construction of the Act, and § 16–204(b) in particular, that depends largely on an examination of the historical roots of the Act's enactment, the "nearly contemporaneous[ ] . . . establishment of the District Court," and the promulgation of pertinent Rules of Procedure "governing post-arrest and pre-trial procedures." The District Court Defendants assert:

> The statute, the rules, and the District Court were part of an overarching design to ensure that Maryland practice conformed to constitutional requirements, to ensure that arrestees received prompt probable-cause determinations, to facilitate the appointment of counsel in advance of critical stages of the proceedings, such as a preliminary hearing or trial in the District Court, and to encourage the entry of counsel early in circuit court proceedings, thus avoiding delay.

The District Court Defendants contend that the Act cannot be divorced from its constitutional underpinnings, which in their view demonstrate that the initial bail hearing is not a critical stage for Sixth Amendment purposes; consequently, the Plaintiffs have no right under the Act to public defender representation at the initial bail hearing. In further support of that argument, the District Court Defendants point to Maryland Rule 4–214(b), which they believe reflects the con-

stitutionally-based foundations of the Act. That rule provides, in part:

> **Extent of duty of appointed counsel.** When counsel is appointed by the Public Defender or by the court, representation extends to all stages in the proceedings, including but not limited to custody, interrogations, preliminary hearing, pretrial motions and hearings, trial, motions for modification or review of sentence or new trial, and appeal.

The District Court Defendants assert that, despite the language of § 16–204(b) of the Act extending representation to "all stages of a proceeding," Rule 4–214(b) does not extend as far. They ask us to read the Act and its legislative history in conjunction with Rule 4–214(b) and its history. The District Court Defendants urge that the history supports their argument because "[t]he impetus for enactment of the legislation establishing Maryland's statewide public defender system was the Supreme Court's extension of the right to counsel at a preliminary hearing." [18] They rely, too, on unsuccessful efforts over the years to amend the statutory language to provide expressly for representation at bail hearings.

The Plaintiffs urge a far different interpretation of § 16–204(b). They argue that, by its plain language, the statute dictates the outcome here: indigent defendants are entitled to public defender representation at "all stages" of the proceedings, and "all means all." The Plaintiffs direct our attention to subsections § 16–204(b)(1)(i) and (iv). They claim entitlement to public defender representation under either (b)(1)(i), because they have been charged with a "serious offense" as that term is defined in the Act, *see* § 16–101(h)(1)–(4), or under (b)(1)(iv), because they are at risk of possible incarceration in a public institution such as the Central Booking Jail. The Plaintiffs then posit that the only remaining question concerns, in their words, "whether bail is a covered 'stage' under

---

**18.** The District Court Defendants rely on the Report of Joint Governor's Commission and Baltimore City Bar Association's Committee for the Study of the Public Defender System for the State of Maryland in support of their argument that the Act was not meant to extend a right to counsel prior to the preliminary hearing.

§ 16–204(b)(2) such that representation must be provided at that stage." They answer that question by directing us to the plain language of the subsection itself, which states that representation is to be provided at *"all stages of a proceeding listed in paragraph (1) of this subsection,* including, in criminal proceedings, *custody,* interrogation, preliminary hearing, arraignment, trial, and appeal." (Alteration by the Plaintiffs.)

The Plaintiffs urge, moreover, a view of the legislative history of the Act that varies significantly from that of the District Court Defendants. The Plaintiffs cite the purposes announced in the Act, to *"assure the effective assistance and continuity of counsel to indigent accused individuals taken into custody and indigent individuals in criminal and juvenile proceedings before the courts of the State."* § 16–201(2) (alteration by the Plaintiffs). The Plaintiffs further assert that the Act was drawn from a Montgomery County ordinance, which provided counsel at bail hearings; therefore, when the General Assembly enacted § 16–204(b), it was well aware of what "all stages of a proceeding" would encompass.

We conclude that the Plaintiffs have the better part of the argument. It is plain to us, as it was to the Circuit Court and is to the Public Defender himself, that the relevant language of the Act is unambiguous and dictates the outcome here.

In construing the extent of the Plaintiffs' entitlement under § 16–204(b), we do not write on a clean slate. We have addressed on a number of occasions the applicability *vel non* of that subsection. One of the first opportunities came when we were asked in *Webster v. State,* 299 Md. 581, 474 A.2d 1305 (1984), to decide, among other issues, whether the Act, then codified at Article 27A, entitles an indigent arrestee to appointed counsel at a pre-indictment lineup. We noted at the outset of our discussion on the subject: "It is clear that legal representation by the Public Defender is not limited to those proceedings in which the Sixth Amendment demands the assistance of counsel: the statute contemplates such represen-

tation in certain areas beyond the reach of that guarantee." *Id.* at 603, 474 A.2d at 1317.

We recognized that a lineup that takes place before formal accusation, though not a "critical stage" under the Sixth Amendment, "is nevertheless a critical stage for the suspect, who, of course, is in custody at the time." *Id.* at 603–04, 474 A.2d at 1317. Therefore, notwithstanding that a lineup that occurs before formal accusation "is not encompassed within the types of cases designated in [former] § 4(b) as calling for the assistance of the Public Defender," "such a confrontation, arranged by the police, at which a suspect is exhibited in order to obtain evidence that he is the criminal agent, is within the ambit of the Public Defender statute." *Id.* at 604, 474 A.2d at 1317.

We discussed *Webster* in *Harris v. State,* 344 Md. 497, 511–12, 687 A.2d 970, 977, *cert. denied,* 522 U.S. 1017, 118 S.Ct. 605, 139 L.Ed.2d 492 (1997). *Harris* involved whether a court could appoint standby counsel from the Office of the Public Defender for a *pro se* defendant who validly had waived his right to counsel. Although we decided that the Act did not provide for public defender representation in such a role, we did not depart from our prior understanding that the Act reached beyond the demands of the Sixth Amendment. *Id.* at 499, 687 A.2d at 971. We noted in *Harris* that we had been "persuaded [in *Webster* ] by the fact that the policy of the Public Defender statute 'was not only "to provide for the realization of the constitutional guarantees of counsel in the representation of indigents ... in criminal and juvenile proceedings within the State ..." but also "to assure effective assistance and continuity of counsel to indigent accused taken into custody and indigent defendants in criminal and juvenile proceedings before the courts of the State of Maryland...."'" *Id.* at 512, 687 A.2d at 977 (quoting *Webster,* 299 Md. at 603, 474 A.2d at 1316 (quoting former Art. 27A § 1, now § 16–201 of the Act)) (alteration in original).

Subsequently, in *State v. Flansburg,* 345 Md. 694, 697, 694 A.2d 462, 463–64 (1997), we were asked to decide whether an

indigent defendant is entitled to representation by the Public Defender when filing a motion to modify a sentence that was imposed at a probation revocation proceeding. We observed, as we had in *Webster*, that "the right to counsel under the Public Defender Act is significantly broader than the constitutional right to counsel." *Flansburg*, 345 Md. at 700, 694 A.2d at 465. We noted that probation revocation proceedings are civil proceedings, and we reasoned that they came within the ambit of what was formerly Article 27A, § 4(b)(4), now § 16–204(b)(1)(iv) of the Act, because those proceedings could result in incarceration. *Id.* at 700 n. 5, 700, 694 A.2d at 465 n. 5, 465. We further reasoned that a motion to modify a sentence imposed at a probation revocation proceeding is a "stage" of that proceeding, entitling the defendant to public defender representation under then Article 27A, § 4(d), now § 16–204(b)(2). *Id.* at 702, 694 A.2d at 466. We therefore held that Flansburg was entitled to have Public Defender representation in filing the motion to modify the sentence that had been imposed at the probation revocation proceeding. *Id.* at 703, 694 A.2d at 467.

Most recently, we decided *McCarter*. We considered in that case whether "a defendant has a right to counsel at an initial appearance, under Maryland Rule 4–213(c), at which time the defendant purported to waive his right to a jury trial." 363 Md. at 707, 770 A.2d at 196. We held that the Public Defender Act bestows such a right to counsel at the proceeding, and, consequently, the trial court erred when it accepted at that proceeding McCarter's purported waiver of his right to a jury trial, without the benefit of counsel. *Id.* at 713, 770 A.2d at 199–200.

In so holding, we undertook the same analysis of the Public Defender Act as we had done in *Webster* and *Flansburg*. We restated at the outset what by then was a settled proposition of law: "[T]he right to counsel under the Public Defender Act is significantly broader than the constitutional right to counsel." *Id.* at 713–14, 770 A.2d at 200 (internal quotation marks and citations omitted). We reasoned that a Rule 4–213(c) initial appearance is a "stage" of the proceeding; *id.* at 715–

16, 770 A.2d at 201; representation under the Public Defender Act "extends to all stages in the proceedings"; and " '[a]ll' means 'all' "; *id.* at 716, 770 A.2d at 201 (quoting former Article 27A, § 4(d)). We went so far as to state: "The specific types of proceedings listed in the statute . . . are for purposes of illustration only." *Id.*, 770 A.2d at 201.[19]

*McCarter,* much like *Webster* and *Flansburg* preceding it, directs us to the proper disposition of the present case. The parties agree, and we concur, that the initial appearance before a Commissioner in Maryland is an event that marks the beginning of the formal criminal adversarial process. Indeed, the Supreme Court has confirmed that "[a] criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and *his liberty is subject to restriction,* marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel." *Rothgery v. Gillespie County,* 554 U.S. at 213, 128 S.Ct. 2578 (emphasis added).[20]

The initial appearance before the Commissioner—including the bail hearing that is part of that event—is clearly encompassed within a "criminal proceeding," and may result in the defendant's incarceration. The only remaining question is

---

**19.** Several years after *McCarter,* we decided *Fenner v. State,* 381 Md. 1, 846 A.2d 1020 (2004), *cert. denied,* 543 U.S. 885, 125 S.Ct. 158, 160 L.Ed.2d 143 (2004). We held in that case that a Rule 4–213(c) initial appearance in the Circuit Court is not a critical stage of the criminal proceeding for purposes of the Sixth Amendment. *Id.* at 4, 846 A.2d at 1022. We did not address, however, the applicability of the Public Defender Act to that proceeding, which, we reaffirm today, sweeps more broadly than does the Sixth Amendment protection.

**20.** The Supreme Court described its holding in *Rothgery* as "narrow"; the Court did not decide "whether the 6–month delay in appointment of counsel resulted in prejudice to Rothgery's Sixth Amendment rights." 554 U.S. at 213, 128 S.Ct. 2578. That is to say, the Court did not determine whether the initial appearance is a post-attachment, "critical stage" of the adversary process requiring the presence of counsel, unless waived by the defendant. *See id.* (Alito, J., concurring) ("I do not understand [the Court's opinion] to hold that a defendant is entitled to the assistance of appointed counsel as soon as his Sixth Amendment right attaches.").

whether the bail determination is a "stage" of that proceeding. Doubtless it is.

We detailed at the outset of this opinion the process by which the Commissioner must determine, by reference to a number of fact-laden considerations listed in Rule 4–216(d), whether the defendant is to be released on his or her own recognizance or incarcerated until further consideration by a District Court judge at a subsequent bail review hearing. *See* Rules 4–213(a), 4–216. The presence of counsel for that determination surely can be of assistance to the defendant in that process. We are informed by the Plaintiffs that "[u]nrepresented suspects are more likely to have more perfunctory hearings, less likely to be released on recognizance, more likely to have higher and unaffordable bail, and more likely to serve longer detentions or to pay the expense of a bail bondsman's non-refundable 10% fee to regain their freedom." The Plaintiffs also note that an unrepresented person, in an effort to obtain release, could make incriminating statements to the Commissioner.[21]

That a defendant *might* have bail reduced or eliminated by a District Court judge at a subsequent bail review hearing does not dispel or even mitigate the fact that, whenever a Commissioner determines to set bail, the defendant stands a good chance of losing his or her liberty, even if only for a brief time. Furthermore, the likelihood that the Commissioner will give full and fair consideration to all facts relevant to the bail determination can only be enhanced by the presence of counsel. *See* Abell Pretrial Release Project Report at iii (finding that "most judicial officers decide whether to order release on recognizance or a financial bail without having essential infor-

---

**21.** The Plaintiffs' concerns are not unwarranted. In *Fenner*, the defendant appeared before the District Court for a bail review hearing after his arrest and initial appearance before the District Court Commissioner. 381 Md. at 6, 846 A.2d at 1023. The District Court questioned whether Fenner had "anything [he'd] like to tell [the court] about [himself]." *Id.* at 7, 846 A.2d at 1023. Fenner responded with inculpatory statements, including that his acts were "just for me to make ends meet, to make money for me to be able to get by." *Id.*, 846 A.2d at 1024.

**430**

mation about the person's employment status, family and community ties, and ability to afford bail"). We cannot overlook, moreover, the evidence in the record that the Commissioner's initial bail decision often is not disturbed by the District Court judge on bail review. *See id.* at 32 (finding that, at bail review, District Court judges in the sample group maintained prior bail conditions in roughly half the cases, released only 25% of detainees on personal recognizance, and lowered bail for only one in four individuals (27%)).[22] Whenever the Commissioner's bail decision is left standing, the defendant will remain incarcerated for weeks, if not many months, before trial.

The District Court Defendants assert that Rule 4–214 informs, better than does the plain language of the Act, the stages at which the right to counsel applies. Rule 4–214(b) provides that, "[w]hen counsel is appointed by the Public Defender or by the court, *representation extends to all stages in the proceedings, including but not limited to* custody, interrogations, preliminary hearing, pretrial motions and hearings, trial, motions for modification of review of sentence or new trial, and appeal." (Emphasis added.) We see no conflict between Rule 4–214(b) and § 16–204(b). Both provisions extend representation to "all stages," though each provides a different exemplary list, which, as stated in Rule 4–214(b), is not exclusive.[23]

For all these reasons, we hold that the bail-hearing portion of the initial appearance before the Commissioner is a "stage" of the criminal proceeding, as that term is employed in § 16–204(b)(2) of the Public Defender Act. Because public

---

22. We emphasize that District Court judges owe no deference to the Commissioners' initial bail determinations.

23. It is unnecessary to respond further to this Rule-based assertion by the District Court Defendants. We point out, though, that to the extent the District Court Defendants assert that Rule 4–214 overrides and narrows the scope of public defender representation, set forth in § 16–204(b), the assertion is suspect. *See, e.g., Consol. Constr. Servs., Inc. v. Simpson,* 372 Md. 434, 449–52, 813 A.2d 260, 269–71 (2002) and cases discussed therein.

defender representation is to be afforded "in all stages of a proceeding listed in paragraph [ (b) ](1)," and we have determined that the bail hearing is a stage of a "criminal … proceeding" enumerated at (b)(1)(i), it follows that indigent defendants charged with "serious offense[s]," as that term is defined in the Act, are entitled to appointed counsel at the bail hearing. This conclusion is fully in keeping with our prior decisions in *Webster, Flansburg,* and *McCarter.*

██ We further hold that indigent defendants who are not charged with a serious offense, and therefore do not come within the ambit of § 16–204(b)(1)(i), do come within the reach of § 16–204(b)(1)(iv), because the bail hearing at the initial appearance for the non-serious offense might result in incarceration. Subsection (b)(1)(iv) provides public defender representation for indigent persons at "any other proceeding in which confinement under a judicial commitment of an individual in a public or private institution may result." As the District Court Defendants note, § 16–204(b)(1)(iv) applies to civil commitments and civil contempt proceedings. *See Flansburg,* 345 Md. at 700, 700 n. 5, 694 A.2d at 465, 465 n. 5. Still, to our knowledge, we never have suggested that § 16–204(b)(1)(iv) is limited to those proceedings. It would be nonsensical, and contrary to the plain language of § 16–204(b)(1)(iv), to construe that provision as *excluding* indigent persons who are not charged with a serious offense—and so not within subsection (b)(1)(i)—yet nonetheless face at the bail hearing the (albeit unlikely) possibility of a no-bail disposition.

██ Finally, given our holding that § 16–204(b) of the Public Defender Act is plain, there is no cause to delve into its legislative history. The first principle of statutory construction is that the legislative purpose is to be ascertained, if possible, from the plain language of the statute at issue. *Guttman v. Wells Fargo Bank,* 421 Md. 227, 234–35, 26 A.3d 856, 860 (2011). If the language of the statute is plain and unambiguous, then our role in determining the legislative purpose ends. *Id.* at 234–35, 26 A.3d at 860. Moreover, though we may, but need not, point to the legislative history

as confirmation of the purpose expressed through the statute's plain language, we may *not* undertake a search of a plainly written statute's legislative history to seek out evidence of a contrary intent by the General Assembly. *Id.* at 234–35, 26 A.3d at 860. We shall not violate this rule of statutory construction by investigating the legislative history of the Public Defender Act in an effort to uncover aspects of that history that *might* (at least in the view of the District Court Defendants) suggest a legislative intent that is contrary to the Act's plain language.

In sum, indigent defendants are entitled, under § 16–204(b) of the Public Defender Act, to public defender representation at the bail-hearing portion of the initial appearance before a Commissioner.

### B. *Declaratory Judgment Without Court–Fashioned Remedy*

■ We have noted the Public Defender's agreement with the Plaintiffs' "forceful, meritorious constitutional and statutory claims that they have a right to counsel at their Rule 4–213(a) initial bail hearings before a District Court Commissioner." Consequently, the Public Defender does not challenge the Circuit Court's conclusion that the Public Defender Act mandates representation of indigent defendants at the bail-hearing portion of the initial appearance before the Commissioner. The Public Defender asserts, however, that the Circuit Court nonetheless erred by declaring the Plaintiffs' right to counsel without addressing the practical concerns regarding implementation. That failure, the Public Defender asserts, constitutes "an obvious error in the application of the principles of equity" and is not entitled to any deference.

The Plaintiffs disagree and assert that the Circuit Court had the duty to declare their rights, but no corresponding duty to craft a remedy for implementation. To the contrary, the Plaintiffs assert, the court would have abused its discretion had it declined to declare their right to counsel at initial bail hearings.

"[I]t has long been held that a person whose rights are affected by a statute may obtain a declaration of his rights and status." *Dart Drug Corp. v. Hechinger Co., Inc.*, 272 Md. 15, 25, 320 A.2d 266, 272 (1974) (citing *Pressman v. D'Alesandro*, 211 Md. 50, 54, 125 A.2d 35, 37 (1956)). Courts and Judicial Proceedings Article § 3–409 provides, with limited exception not applicable here,

(a) *In general.*—. . . a court may grant a declaratory judgment or decree in a civil case, if it will serve to terminate the uncertainty or controversy giving rise to the proceeding, and if:

(1) An actual controversy exists between contending parties;

(2) Antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation; or

(3) A party asserts a legal relation, status, right, or privilege and this is challenged or denied by an adversary party, who also has or asserts a concrete interest in it.

We have held consistently that,

when a declaratory judgment action is brought and the controversy is appropriate for resolution by declaratory judgment, "the court must enter a declaratory judgment, defining the rights and obligations of the parties or the status of the thing in controversy," and that judgment must be in writing and in a separate document. That requirement is applicable even if the action is not decided in favor of the party seeking the declaratory judgment.

*Lovell Land, Inc. v. State Highway Admin.*, 408 Md. 242, 256, 969 A.2d 284, 292 (2009) (quoting *Allstate v. State Farm*, 363 Md. 106, 117 n. 1, 767 A.2d 831, 837 n. 1 (2001)) (citation omitted). The crucial question is whether the action is appropriate for declaratory judgment, that is, whether the declaratory judgment would terminate the controversy and whether there are actual, concrete, and adverse claims or interests, as provided by C.J. § 3–409. We never have held that declaratory judgment is inappropriate because a party may incur a

consequential, albeit substantial burden, particularly under the circumstances here, where the statutory right to counsel is at issue in a class action suit.

Moreover, the budgetary concerns of the Public Defender never have played a role in Maryland appellate decisions involving defendants' statutory right to counsel. *See, e.g., Webster,* 299 Md. at 623, 474 A.2d at 1327 (recognizing a right to counsel under the Public Defender Act at lineups conducted before the initiation of adversary proceedings, although the issue was not decided by the lower courts or briefed in the Court of Appeals, without mentioning the fiscal practicability of implementation). As Judge Alan Wilner explained, writing then for the Court of Special Appeals in *Baldwin v. State,* 51 Md.App. 538, 555, 444 A.2d 1058, 1069 (1982), "it goes without saying that reductions in the Public Defender's budget and his desire to be frugal have no relevance whatever in the matter" of whether a defendant qualified as "indigent" under the Public Defender statute. Judge Wilner emphasized the court's obligation to uphold the law, "and that obligation is not subject to or in any way dependent upon the level of appropriations received by the Public Defender." *Id.,* 444 A.2d at 1069; *cf. Office of the Pub. Defender v. State,* 413 Md. 411, 427 n. 12, 993 A.2d 55, 64 n. 12 (2010) (commenting upon but not deciding the legal validity of COMAR 14.06.03.05A and D(2), and quoting with apparent approval the statement in *Baldwin,* 51 Md.App. at 555, 444 A.2d at 1069, that "it goes without saying that reductions in the Public Defender's budget and his desire to be frugal have no relevance whatever in the matter"), *superseded on other grounds by* 2011 Md. Laws, ch. 244.

Other courts have expressed similar sentiments. *Caswell v. Califano,* 583 F.2d 9 (1st Cir.1978), provides an example. That case involved a challenge to the delays in scheduling disability benefits hearings. *Id.* at 11. The Court of Appeals for the First Circuit noted that

the vindication of almost every legal right has an impact on the allocation of scarce resources. And the courts, while mindful of the impact of remedies upon persons not before

them, can hardly permit the legal rights of litigants to turn upon the alleged inability of the defendant fully to meet his obligation to others. We agree ... also that it is likely that an ultimate, comprehensive solution to the problem of hearing delays may well require congressional action. We cannot in good conscience, however, deny relief to the plaintiffs pending such action.

*Id.* at 17–18 (citation omitted).

*Hurrell–Harring v. New York,* 15 N.Y.3d 8, 904 N.Y.S.2d 296, 930 N.E.2d 217 (2010), is to like effect. There, the Court of Appeals considered whether a complaint challenging the New York State legislature's delegation to the counties of the responsibilities in implementing the right to counsel could proceed. *Id.,* 904 N.Y.S.2d 296, 930 N.E.2d at 219. The complainants argued that the delegation amounted to an unfunded mandate that served to deprive defendants of their constitutional right to counsel. *Id.,* 904 N.Y.S.2d 296, 930 N.E.2d at 219. The court allowed the claims to proceed notwithstanding that

a remedy in this action would necessitate the appropriation of funds and perhaps, particularly in a time of scarcity, some reordering of legislative priorities. But this does not amount to an argument upon which a court might be relieved of its essential obligation to provide a remedy for violation of a fundamental constitutional right.

We have consistently held that enforcement of a clear constitutional or statutory mandate is the proper work of the courts, and it would be odd if we made an exception in the case of a mandate as well-established and as essential to our institutional integrity as the one requiring the State to provide legal representation to indigent criminal defendants at all critical stages of the proceedings against them.

*Id.,* 904 N.Y.S.2d 296, 930 N.E.2d at 227 (citations omitted).

Moreover, we have not uncovered any instance in which we have delayed implementation of a substantive right, much less one that affects indigent defendants' statutory right to public defender representation, out of concern for the financial costs

attendant to implementation of that right. And the Public Defender has not been able to direct us to any Maryland authority for such a proposition.

For these reasons, we hold that the Circuit Court did not err or abuse its discretion when it issued the declaratory judgment in the Plaintiffs' favor without also considering the Public Defender's fiscal concerns and crafting a remedy to address them. For the same reasons, we deny the Public Defender's request that we stay for some period of time implementation of our judgment that indigent defendants are entitled to public defender representation at the bail-hearing portion of the initial appearance before the Commissioner.

### C. Res Judicata *and Injunctive Relief*

■ Before we close, we address the question raised by the Plaintiffs' cross-appeal, which asks whether the Circuit Court's denial of their request for injunctive relief erects a *res judicata* bar that precludes them from seeking injunctive relief for future violations. The Plaintiffs, understandably, seek to clarify their entitlement to enforce their rights by seeking injunctive relief in the Circuit Court in the event that the District Court Defendants and the Public Defender do not comply with our decision today. The Plaintiffs assert that, if *res judicata* would bar future requests, then the Circuit Court erred in denying them injunctive relief.

The District Court Defendants have moved to dismiss the Plaintiffs' cross-appeal. They present three arguments for why, in their view, the Plaintiffs' claim is not properly before this Court: (1) the Plaintiffs did not properly preserve the claim because it was not raised in the Circuit Court; (2) the Plaintiffs are not aggrieved because they themselves requested that the injunctive relief be denied; and (3) the Plaintiffs seek a premature resolution, which would require this Court to render an improper advisory decision. As for the merits, the District Court Defendants assert that the Circuit Court did not abuse its discretion in declining to decide the issue of preclusive effect.

The Plaintiffs, not surprisingly, oppose the Motion to Dismiss. The Plaintiffs argue that the issue was presented directly to the Circuit Court and is therefore preserved, and they are aggrieved because they never sought the bare denial of their request for injunctive relief. They also argue that, under the circumstances of this case, we must decide the issue they raise in the cross-appeal.

We can dispose quickly of the District Court Defendants' first two arguments for dismissal of the cross-appeal. The Plaintiffs specifically addressed the issue of *res judicata* in their correspondence with the Circuit Court after the court issued its declaratory judgment establishing the Plaintiffs' right to counsel. We have recounted how the Plaintiffs, in an effort to ensure that the Circuit Court's declaratory judgment was "final" for purposes of appeal, sought a ruling on their request for injunctive relief. In requesting, as one option, denial of the injunction, the Plaintiffs stated expressly their position that *res judicata* would not bar future requests for injunctive relief. They pointed directly to C.J. § 3–412, which provides for further remedy after the entry of declaratory judgment.[24] The District Court Defendants, in response, made clear their position that *res judicata* would bar subsequent relief because the Plaintiffs' complaint initially sought both declaratory and injunctive relief. Unquestionably, the *res judicata* issue presented by the cross-appeal was raised in the Circuit Court.

Moreover, in light of this record, there is no merit to the District Court Defendants' assertion that the Plaintiffs are

---

24. Section 3–412 of the Maryland Uniform Declaratory Judgments Act provides:

(a) *Further relief.*—Further relief based on a declaratory judgment or decree may be granted if necessary or proper.

(b) *Application.*—An application for further relief shall be by petition to a court having jurisdiction to grant the relief.

(c) *Show cause order.*—If the application is sufficient, the court, on reasonable notice, shall require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted.

**438**

not aggrieved because they proposed the denial of their request for relief. We repeat, the Plaintiffs' request for an amendment of the court's original denial of injunctive relief was done with the expressed understanding that they would maintain the right to seek injunctive relief in the future, pursuant to C.J. § 3–412.

We reject as well the last of the District Court Defendants' grounds for dismissal of the cross-appeal. Considering this matter's protracted history, the clear positions taken by each party before the Circuit Court and this Court, and the concrete issue presented, we deem it appropriate to address the question whether *res judicata* would apply to bar requests for injunctive relief in the event of future violations. The Public Defender, throughout the proceedings on remand and before this Court, has agreed that the Plaintiffs have a right to counsel at initial bail hearings before the Commissioner. The Public Defender, however, vehemently opposes immediate enforcement of that right to counsel, pointing to the fiscal and practical impediments his office would encounter in its efforts to comply with the declaratory judgment. In light of those stated impediments, and given our holding that the Circuit Court did not err when it issued declaratory judgment in the Plaintiffs' favor without also considering the Public Defender's fiscal concerns and crafting a remedy to address them, it is more than mere conjecture that the Plaintiffs will seek future injunctive relief should the Public Defender be unable to provide representation at initial bail hearings. We therefore deny the District Court Defendants' motion to dismiss and address whether the doctrine of *res judicata* will apply to bar injunctive relief for future violations of the declaratory judgment.

The doctrine of *res judicata* bars a claim only when three distinct elements are satisfied: (1) the parties in the subsequent litigation are the same or in privity with the parties to the earlier dispute; (2) the subsequent action presents matters that were, or could have been, litigated in the earlier action; and (3) there was a valid final judgment on the merits in the earlier dispute. *Colandrea v. Wilde Lake Cmty.*

*Ass'n, Inc.,* 361 Md. 371, 389, 761 A.2d 899, 908 (2000). The Circuit Court's denial of the Plaintiffs' request for injunctive relief does not satisfy either the second or third of these criteria. Obviously, the Plaintiffs could not have litigated *future* violations of the declaratory judgment before the judgment was issued and any such violations occurred. Additionally, it is clear from the Circuit Court's initial ruling that the court believed it premature to consider entering an injunction because the court had stayed its decision pending appellate review. The denial, therefore, was not on the merits of the Plaintiffs' request.

We therefore hold that the Circuit Court's denial of the Plaintiffs' request for injunctive relief does not preclude any future requests by the Plaintiffs for injunctive relief to enforce the right to counsel declared in that judgment.

## III.

In sum, we hold that the bail hearing that occurs at the initial appearance before a Commissioner, held pursuant to Maryland Rules 4–213(a) and 4–216, is a stage of the criminal proceeding under § 16–204(b) of the Public Defender Act. Consequently, if a defendant qualifies for public defender representation, a bail hearing may not occur at the initial appearance unless the defendant has been afforded appointed counsel or waived the right to counsel. We do not mean by our holding that the Commissioner is foreclosed from carrying out all of the other duties attendant to the initial appearance, pursuant to Rule 4–213(a), if counsel is not present. What we do mean is that, whenever a person purporting to be indigent has not waived public defender representation at the initial appearance, the Commissioner may not proceed to the bail determination in the absence of a public defender who has assumed representation. If a public defender is not immediately available to assume representation, then the Commissioner must delay the bail hearing until such representation can be provided or is waived by the defendant.

Moreover, notwithstanding that the present case deals only with bail hearings before Baltimore City Commissioners, our

holding applies with equal force to initial appearances before Commissioners throughout Maryland. That is to say, no bail determination can be made concerning an indigent person without the presence of counsel at any initial appearance in Maryland, unless such representation has been waived. It also follows quite naturally from our holding that there is an entitlement to public defender representation at the subsequent District Court bail review hearing, pursuant to Maryland Rule 4–216(f).[25]

We further hold that the Circuit Court neither erred nor abused its discretion in declining to consider, and provide a remedy for, the fiscal concerns the Public Defender raised in connection with implementation of the right to counsel at the initial bail hearing before a Commissioner. Moreover, we decline the Public Defender's request for a stay in implementing today's holding affirming that right. The Public Defender's asserted defense of budgetary impracticability, though evidently pertinent in many contexts, is not a proper consideration for the judiciary. We cannot declare that Plaintiffs have a statutory right to counsel at bail hearings and, in the same breath, permit delay in the implementation of that important right and thereby countenance violations of it, even for a brief time.

Finally, for the reasons we have stated, we deny the District Court Defendants' motion to dismiss the Plaintiffs' cross-appeal, and we hold that *res judicata* does not bar Plaintiffs from seeking further injunctive relief, as provided by C.J. § 3–412, to enforce the rights declared in the December 28, 2010 judgment of the Circuit Court.

---

**25.** We note, in connection with our holding today, that "this Court has held, on equal protection principles, that a person with means to obtain his own lawyer has a right to representation by his [or her] own counsel which is equally as broad as an indigent's right under the Public Defender Act." *McCarter*, 363 Md. at 714, 770 A.2d at 200 (quoting *Flansburg*, 345 Md. at 700 n. 4, 694 A.2d at 465 n. 4); *accord Wilson v. State*, 284 Md. 664, 671, 399 A.2d 256, 260 (1979) ("[A]n accused with the means to hire counsel to represent him ... could not be denied such representation in light of the statutory provisions granting legal assistance to an indigent accused.").

**JUDGMENT OF THE CIRCUIT COURT FOR BALTI-
MORE CITY AFFIRMED. COSTS TO BE PAID BY THE
DISTRICT COURT DEFENDANTS.**

HARRELL and ADKINS, JJ., concur and dissent.

HARRELL, J., concurring and dissenting, in which
ADKINS, J., joins.

Reflecting on one point a rigidity that I find unacceptable
(see Majority op. at 432–36, 76 A.3d at 979–81),[1] the otherwise
righteous Majority opinion turns a deaf ear to the plea of the
Office of the Public Defender ("OPD") that, should the Court
affirm the judgment of the Circuit Court for Baltimore City, a
stay be granted of the enforcement of the right declared in
this case so that the OPD has "time to secure adequate
resources to provide effective representation at initial bail
hearings," to the end of not affecting adversely the OPD's
ongoing other responsibilities. The Majority finds the pros-
pect of further proceedings in the Circuit Court to flesh-out
the details of the remedy for Petitioners' newly-declared right
or, in the alternative, a stay, unparalleled in Maryland juris-
prudence. (Majority op. at 435–36, 76 A.3d at 980–81—
"Moreover, we have not uncovered any instance in which we
have delayed implementation of a substantive right, much less
one that affects an indigent defendant's statutory right to
public defender representation, out of concern for the financial
costs attendant to implementation of that right. And the
Public Defender has not been able to direct us to any Mary-
land authority for such a position.").[2]

It is unclear whether the Majority believes that it lacks
discretion to grant relief to the OPD or whether it is merely

---

1. I am reminded of the royal pronouncement uttered by the actor Yul
   Brynner in the movie "The Ten Commandments" (1956), who, in the
   character of Pharaoh Ramseses II of Egypt, said:
   So let it be written;
   So let it be done.

2. The Majority opinion, at 432–36, 76 A.3d at 979–81, analyzes only the
   OPD's request for further proceedings in the trial court to flesh-out
   implementation of the remedy; however, the reasons given by the

unpersuaded to do so. Judge Adkins and I, on the other hand, are persuaded to exercise our discretion to urge that a stay of modest duration should have been part of this Court's judgment.

As the OPD summarized in its opening brief:

It is undisputed that the Public Defender's attorney caseloads are stretched to—and even beyond in some instances—the acceptable limit. In 2009, the Office was out of compliance with the Maryland caseload standards in 11 districts (out of 12 for district court cases and 10 districts for circuit court cases. The Public Defender estimates that, should the circuit court's ruling be affirmed, there could be thousands of initial bail hearings per year, for which the Office would have to provide representation on a 24–hour–a–day, seven-days-a week basis at the Baltimore City Central Booking facility[3] [Internal citation omitted.]

Further, in its reply brief, the OPD foresees (and Judge Adkins and I agree) that the "Office's persistent and severe resource constraints would, absent some further remedy, render it unable to supply counsel at initial bail hearings while still meeting its constitutional and ethical representation obligations, including to provide effective assistance of counsel, at later, critical stages [of criminal proceedings]."

Because the Court identifies a statutory right, rather than one grounded in constitutional law, consideration should be given to the ramification that the Legislature and Governor, having not heretofore provided budgetarily for implementation of this right, must do so. The Legislature meets once a year normally, between January and April. Although supplemental appropriations to an annually adopted State budget are possible, in either the case of the annual budget or supplementary

---

Majority opinion for rejection of that request are claimed to apply with like result to deny the OPD's alternative request for a stay (Op. at 435–36, 76 A.3d at 981).

**3.** As the Majority opinion makes clear, "our holding applies with equal force to initial appearances before Commissioners throughout Maryland." Majority op. at 439–40, 76 A.3d at 983.

appropriations, the process of formulation, vetting and adoption of those actions is not as instantaneous relatively as the issuance of our mandate in this case. In addition, the Governor and the Legislature have a few other matters and priorities to balance during each annual (or the infrequent special) legislative session. To refuse to give any weight to these realities, along with the current state of the out-of-standards performance by the OPD of its pre-existing undertakings, invites application to the Court's opinion in this case of the cliched metaphor of the "ostrich's head in the sand."

The tasks confronting implementation of the Court's holding are not limited to the OPD. Consideration of the venues in State and local detention facilities, where initial appearances are held, may need to be assessed for new construction or reconstruction in order to balance additional attorney participation by the OPD and security objectives.

Although Judge Adkins and I concur with the Majority opinion's holdings regarding: (1) recognition of the declared statutory right of indigent persons to have the effective assistance of counsel from the OPD for the bail hearing portion of initial appearances before District Court Commissioners; (2) the inappropriateness of res judicata effect on subsequently-sought injunctive relief for future violations of the statutory right declared here; and (3) declining to vacate the declaratory judgment and remanding this matter to the Circuit Court for Baltimore City for further proceedings to flesh-out the remedy,[4] we part company with our colleagues who refuse the OPD's request for a stay. Rather, we would have granted a stay of the judgment until 30 June 2012,[5] during which period,

---

4.  We join the Majority in rejecting this form of relief sought by the OPD because of our concern that such "further [judicial] proceedings" could become a vehicle of enduring delay before the right is implemented. The courts need not officiate over the inevitable negotiations that must occur. Although not an apt analogy, we do not wish to foster the sort of delays in implementation that followed the Supreme Court's "all due haste" direction in the arena of school desegregation.

5.  This date was selected because it is the eve of a new State fiscal year, by which time the upcoming regular legislative session of 2012 will

the OPD, the Governor, the Legislature and others must do what needs to be done to effectuate the right declared here. During the stay, we would expect the OPD, in addition to efforts to insure the full execution of the right declared here on or after 30 June 2012, would formulate and carry-out a "best efforts" initiative, using its existing resources, to represent indigent persons for bail consideration purposes at initial hearings before Commissioners.[6]

Judge ADKINS authorizes me to state that she joins the views expressed in this concurring and dissenting opinion.

---

have been completed and any enacted bills should have been signed into law by the Governor (or vetoed).

**6.** As an example, perhaps (if the Rules allow) an OPD attorney or attorneys could supervise directly volunteer law students in aid of maximizing representation at implicated bail hearings.