76 A.3d 1019

**Paul B. DeWOLFE, in his official capacity as the Public Defender for the State of Maryland, et al.**

v.

**Quinton RICHMOND, et al.**

**No. 34, Sept. Term, 2011.**

Court of Appeals of Maryland.

Sept. 25, 2013.

Order Denying Motions Nov. 6, 2013.

Julia Doyle Bernhardt, Asst. Atty. Gen. (Douglas F. Gansler, Attorney General of Maryland, and William F. Brockman, Deputy Solicitor General, Baltimore, MD), on brief, A. Stephen Hut, Jr. (Aaron B. Goetzl and Ashley Bashur of Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C.), on brief, for Appellants/Cross–Appellees.

Jessica Weber, Esq., Thomas Davies, Esq., Francis D. Murnaghan, Jr. Appellate Advocacy Fellow, Baltimore, MD, for Amici Curiae brief of Public Justice Center, International Cure, Alternative Directions, Inc., and Justice Policy Institute for Appellants.

Michael Schatzow (Mitchell Y. Mirviss of Venable LLP, Baltimore, MD; Douglas L. Colbert, Maryland School of Law Access to Justice Clinic, Baltimore, MD), on brief, for Appellees/Cross–Appellant.

Daniel P. Westman, Esq., Morrison Foerster LLP, McLean, VA, for Amicus Curiae brief of Society of American Law Teachers for Appellees.

Howard Schiffman, Esq., Andrew P.C. Wright, Esq., Schulte Roth & Zabel LLP, Washington, D.C., Daniel L. Greenberg, Esq., Ronald B. Risdon, Esq., Brian C. Tong, Esq., Schulte Roth & Zabel LLP, New York, NY, for Amicus Curiae brief of The Leadership Conference on Civil and Human Rights, in Support of Appellees and Affirmance of the Order of the Circuit Court.

Christina M. Gattuso, Esq., Kilpatrick Townsend and Stockton LLP, Washington, D.C., Gia L. Cincone, Esq., Kilpatrick Townsend and Stockton LLP, San Francisco, CA, for Amici Curiae brief of National Association of Criminal Defense Lawyers, The American Civil Liberties Union, The American Civil Liberties Union of Maryland, The Brennan Center for Justice at New York University Law School, The Center for

Constitutional Rights, and The National Legal Aid and Defender Association in Support of Appellees.

A.J. Bellido De Luna, Esq., Michael Pinard, Esq., University of Maryland Francis King Carey School of Law, Baltimore, MD, for Amici Curiae brief of Faculty Members of The University of Baltimore School of Law and The University of Maryland Francis King Carey School of Law in Support of Appellees.

Joshua I. Civin, Esq., Washington, DC, John Payton, Esq., Debo P. Adegbile, Esq., Christina Swarns, Esq., Johanna B. Steinberg, Esq., NAACP Legal Defense and Educational Fund, Inc., New York, NY, Steven F. Barley, Esq., Andrea W. Trento, Esq., Lindsay S. Goldberg, Esq., Hogan Lovells US LLP, Baltimore, MD, for Amicus Curiae brief of NAACP Legal Defense and Educational Fund, Inc. in Support of Appellees.

Baruch Weiss, Esq., Dirk C. Phillips, Esq., Jeremy W. Hockberg, Esq., Rubina S. Madni, Esq., Daniel M. Friedman, Esq., Ingrid A. Epperly, Esq., Arnold & Porter LLP, Washington, D.C., William T. Robinson III, Esq., American Bar Association, Chicago, IL, for Amici Curiae brief of The American Bar Association in Support of Appellees.

Argued before BARBERA, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BELL,* and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

ELDRIDGE, J.

In an opinion and order filed in this case on January 4, 2012, but not officially published because of motions for reconsideration, Judge (now Chief Judge) Barbera for the Court referred to "the complex procedural history of this case." Since that time, the case's procedural history has become a great deal

---

* Bell, C.J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

more complex. Despite the historical complexity, however, the case both then and now has presented a single broad legal issue: whether an indigent criminal defendant is entitled to state-furnished counsel at the defendant's initial appearance before a District Court Commissioner pursuant to Maryland Rule 4–213(a).

## I.

Plaintiffs in this case filed a complaint in the Circuit Court for Baltimore City alleging that they were denied Public Defender representation during their initial appearance proceedings before a District Court Commissioner. They named as defendants the District Court of Maryland, the Chief Judge of the District Court of Maryland, the Administrative Judge of the District Court in Baltimore City, and several other District Court officials in Baltimore City.[1] The plaintiffs asserted that the initial appearance proceeding, during which a District Court Commissioner determines whether there is probable cause for the defendant's arrest if the arrest occurred without a warrant and whether an arrested individual is to be detained, or released on bail, or released on his or her own recognizance, is a critical stage of the criminal proceeding requiring state-furnished counsel under the provisions of the Public Defender Act, Maryland Code (2001, 2008 Repl. Vol., 2012 Supp.), § 16–204(b)(2) of the Criminal Procedure Article. They also relied upon the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights. In addition, they argued that the failure to furnish counsel violated the due process protections of the Fourteenth Amendment to the United States Constitution and

---

1. Hereafter, we shall refer to these defendants at "the District Court defendants." Later, the District Court of Maryland was dismissed as an improper defendant. The Public Defender, Paul DeWolfe, was joined as a defendant in this case after this Court remanded the case to the Circuit Court in 2010. *Richmond v. District Court of Maryland*, 412 Md. 672, 990 A.2d 549 (2010). Since this Court's opinion was filed on January 4, 2012, we granted the State of Maryland's motion to intervene as a defendant.

Article 24 of the Maryland Declaration of Rights. Plaintiffs sought a declaratory judgment and an injunction to enjoin the defendants from violating the plaintiffs' right to representation at initial appearances before District Court Commissioners.

Plaintiffs Quinton Richmond, Jerome Jett, Glenn Callaway, Myron Singleton, Timothy Wright, Keith Wilds, Michael La-Grasse, Ralph Steele, Laura Baker, Erich Lewis, and Nathaniel Shivers were each separately arrested for unrelated criminal activity occurring in Baltimore City. Each plaintiff was arrested for a "serious offense" as defined in the Public Defender Statute, § 16–101(h)(1)–(4). Each plaintiff was detained at the Central Booking Jail in Baltimore City and brought before a Commissioner for an initial appearance pursuant to statute and Maryland Rule 4–213.[2]

While the Rules indicate that a defendant's first appearance must be before a "judicial officer," the Rules also provide that a "judicial officer" may be either a District Court Commissioner or a Judge. Maryland Rule 4–102(f). In each criminal case involving the plaintiffs in this civil case, the judicial officer was a District Court Commissioner. The parties agree that it is general practice that Commissioners, rather than District Court Judges, preside over initial appearances. A Commissioner need not be a lawyer. *See* Maryland Code (1974, 2013 Repl. Vol.) § 2–607(b) of the Courts and Judicial

---

**2.** Sections 2–607(c)(1) and (2) of the Courts and Judicial Proceedings Article detail the duties of Commissioners:

"(c) *Duties*—(1) A commissioner shall receive applications and determine probable cause for the issuance of charging documents.

(2) A commissioner shall advise arrested persons of their constitutional rights, set bond or commit persons to jail in default of bond or release them on personal recognizance if circumstances warrant, and conduct investigations and inquiries into the circumstances of any matter presented to the commissioner in order to determine if probable cause exists for the issuance of a charging document, warrant, or criminal summons and, in general, perform all the functions of committing magistrates as exercised by the justices of the peace prior to July 5, 1971."

Maryland Rule 4–213 specifically states that a judicial officer must inform the defendant of the charges against him or her. The defendant must also be informed of his right to counsel at trial and, when applicable, his right to a preliminary hearing.

Proceedings Article; Rule 4–102(f); *State v. Smith,* 305 Md. 489, 501–505, 505 A.2d 511, 517–519, *cert. denied,* 476 U.S. 1186, 106 S.Ct. 2925, 91 L.Ed.2d 552 (1986).

The District Court Commissioner determines at the initial appearance, pursuant to Maryland Rule 4–216, whether a plaintiff is eligible for pretrial release. If a defendant was arrested without a warrant, the Commissioner determines whether there was probable cause for each charge and for the arrest. If there was no probable cause, the defendant is released with no conditions of release.

If the Commissioner finds that there was probable cause, Rule 4–216(f) details the numerous factors a Commissioner must take into consideration when imposing "on the defendant the least onerous condition or combination of conditions of release" that serves the purposes of "ensur[ing] the appearance of the defendant," "protect[ing] the safety of the alleged victim," and "ensur[ing] that the defendant will not pose a danger to another person or to the community." These factors include, among other things, the nature and circumstances of the offense charged, the defendant's prior record of appearance at court proceedings, and the defendant's family ties, employment status, financial resources, reputation, character, and length of residence in the community and in the State. The recommendation of the State's Attorney and any information presented by the defendant or defendant's counsel also must be considered.

If a Commissioner does not release an arrested individual following this initial appearance, the defendant must be presented to a District Court Judge "immediately if the Court is in session, or if the Court is not in session, at the next session of the Court."[3] As this Court pointed out in its January 4,

---

3. *See* § 5–215 of the Criminal Procedure Article, which states:

"A defendant who is denied pretrial release by a District Court commissioner or who for any reason remains in custody after a District Court commissioner has determined conditions of release under Maryland Rule 4–216 shall be presented to a District Court

2012, opinion, the Commissioner's initial bail decision is not often changed during subsequent review, with the bail set by the Commissioner being maintained by the Judge in nearly half of the bail reviews.

As numerous briefs to this Court pointed out, the failure of a Commissioner to consider all the facts relevant to a bail determination can have devastating effects on the arrested individuals. Not only do the arrested individuals face health and safety risks posed by prison stays, but the arrested individuals may be functionally illiterate and unable to read materials related to the charges. Additionally, they may be employed in low wage jobs which could be easily lost because of incarceration. Moreover, studies show that the bail amounts are often improperly affected by race.

In Baltimore City, an arrestee's initial appearance occurs in a "tiny narrow booth" in Central Booking Jail, which does not allow the public to attend the proceeding.[4] A record of the proceeding is not made. The Commissioner is separated from the arrested individual by a plexiglass partition, and all communications take place through a speaker system. There are no prohibitions against attorneys participating in these proceedings, but, in practice, arrested individuals are rarely represented by an attorney during an initial appearance before the Commissioner. The State's Attorney, however, maintains a 24–hour "war room" in Central Booking for the purpose of making recommendations to the Commissioner regarding bail. These communications usually occur *ex parte* and without any public record. Without a public record of the proceedings before the Commissioner, the plaintiffs point out that "it [is] impossible to review what a Commissioner or arrestee said or to understand the basis for the ruling."

---

judge immediately if the Court is in session, or if the Court is not in session, at the next session of the Court."

**4.** As in our earlier opinion, we accept the plaintiffs' description of the initial appearance procedures, as their description was not contested by the other parties.

At each of the initial appearances involved in this case, the plaintiff requested an attorney to represent him or her, and also informed the Commissioner that he or she was unable to afford an attorney. Despite the plaintiffs' requests, the Commissioner declined to appoint attorneys and proceeded by setting bails.

In the present civil case, the District Court defendants filed a motion in the Circuit Court for summary judgment as to all claims, and the plaintiffs filed a cross-motion for partial summary judgment. The Circuit Court granted the defendants' motion for summary judgment and entered final judgment for the District Court defendants. The plaintiffs timely appealed and, while the case was pending in the Court of Special Appeals, this Court issued a writ of certiorari. After briefing and oral argument in this Court, we held that, under Rule 2–211(a), the Circuit Court should have dismissed the complaint because of the plaintiffs' failure to join the Public Defender as a party to the action. *See Richmond v. District Court of Maryland,* 412 Md. 672, 990 A.2d 549 (2010). We vacated the Circuit Court's judgment and remanded the case to the Circuit Court with directions to dismiss the complaint unless the plaintiffs joined the Public Defender as a party.

In the Circuit Court on remand, the Public Defender was joined as a defendant in the action. After some procedural skirmishes in the Circuit Court, which we shall not recount here, the Circuit Court granted the plaintiffs' motion for summary judgment and filed a declaratory judgment. The court, however, denied the plaintiffs' request for injunctive relief. The Circuit Court determined that the plain language of the Public Defender Act, § 16–204(b), required the Public Defender to represent indigents at the initial appearance proceedings before a commissioner. The Circuit Court also decided that the failure to provide representation during initial appearances "violated Plaintiffs' due process rights." The Circuit Court stayed its judgment pending appellate review.

Both the Public Defender and the District Court defendants noted timely appeals. The plaintiffs cross-appealed and also

filed in this Court a petition for a writ of certiorari. The questions presented by the plaintiffs queried whether indigent defendants have a right to counsel at initial appearance proceedings before District Court Commissioners under any of the following: Maryland's Public Defender Act, the Sixth Amendment, Article 21 of the Maryland Declaration of Rights, the Federal Constitution's due process guarantee or the Maryland Declaration of Rights' due process guarantee. The Public Defender filed a cross-petition for certiorari, questioning whether the Circuit Court erred in issuing its declaratory judgment "without in any way addressing remedy and how . . . [a] funding shortfall" created by the need to provide counsel at initial appearances before commissioners "might be practicably addressed." This Court granted the petitions. *DeWolfe v. Richmond,* 420 Md. 81, 21 A.3d 1063 (2011).

In the opinion filed January 4, 2012, this Court held that, under § 16-204(b) of the Public Defender Act, indigent defendants are entitled to public defender representation at any initial appearance proceeding conducted before a commissioner. Because the case was decided on statutory grounds, the Court did not reach the state and federal constitutional issues.[5] The Court held that:

> "The initial appearance before the Commissioner—including the bail hearing that is part of that event—is clearly encompassed within a 'criminal proceeding,' and may result in the defendant's incarceration. The only remaining question is whether the bail determination is a 'stage' of that proceeding. Doubtless it is."

We pointed out that the Commissioner must take into account numerous considerations when determining whether a defendant is to be released on his or her own recognizance or

---

**5.** With regard to the other questions presented in the petitions and briefs, this Court held that the Circuit Court did not err in its declaratory judgment determining that plaintiffs were entitled to appointed counsel, notwithstanding the Public Defender's alleged "funding shortfall." We also held that the "Circuit Court's denial of the Plaintiffs' request for injunctive relief does not erect a *res judicata* bar to the Plaintiffs' seeking future injunctive relief."

incarcerated pending the subsequent District Court bail review. Given the number of factors considered by the Commissioner, we held that the "presence of counsel for that determination surely can be of assistance to the defendant in that process." Moreover, the Court gave credence to the plaintiffs' argument that

> " '[u]nrepresented suspects are more likely to have more perfunctory hearings, less likely to be released on recognizance, more likely to have higher and unaffordable bail, and more likely to serve longer detentions or to pay the expense of a bail bondsman's non-refundable 10% fee to regain their freedom.' "

This Court additionally rejected the District Court defendants' argument that any wrong committed by failing to furnish counsel during the initial appearance proceeding was ameliorated by the later bail review hearing by a judge. We held that "the bail-hearing portion of the initial appearance before the Commissioner is a 'stage' of the criminal proceeding, as that term is employed in § 16–204(b)(2) of the Public Defender Act." As a stage of a criminal proceeding, the Public Defender Act then provided that indigent defendants are entitled to appointed counsel during the initial appearance proceedings.

The Court further held on January 4, 2012, that, because the Public Defender Act then provided for representation for indigent persons at "any other proceeding in which confinement under a judicial commitment of an individual in a public or private institution may result," representation should be provided not only to those charged with a "serious offense," but to all indigent persons requesting representation. The Court did not decide whether an indigent criminal defendant had a federal or state constitutional right to state-furnished counsel at an initial appearance before a District Court Commissioner.

While motions for reconsideration of our January 4, 2012, opinion and order were pending, the General Assembly passed and the Governor signed on May 22, 2012, Chs. 504 and 505 of the Acts of 2012.[6] These Acts were "emergency measures," with most of the provisions, including the provisions involved in this case, taking effect upon enactment on May 22, 2012.[7] Among other things, the statutes amended § 16–204(b)(2)(ii) of the Public Defender Act to provide: "Representation is not required to be provided to an indigent individual at an initial appearance before a District Court commissioner." [8]

As such, the first opportunity an arrested indigent individual would have to consult with counsel furnished under the Public Defender Act would occur during the District Court Judge's bail review proceeding. This bail review proceeding should occur directly after the detainee's initial appearance before the Commissioner if the District Court is in session. If the District Court is not in session, however, during intervals such as weekends and holidays, the bail review hearing will occur at the District Court's next session. This delay until the District Court's next session could result in an individual being incarcerated through the weekend or holidays before having an opportunity to consult with appointed counsel or challenge the bail set by the Commissioner.

---

**6.** The two statutes appear to be identical. Ch. 504 had been Senate Bill 422, and Ch. 505 had been House Bill 261.

**7.** *See* Article XVI, § 2, of the Maryland Constitution, providing that laws enacted by the General Assembly shall take effect no earlier than June 1 of the year in which they were passed unless a law is declared to be an emergency law and was passed by a vote of three-fifths of the members of each House. An emergency law may take effect when enacted.

**8.** The text of the amended portion of § 16–204(b)(2) of the Public Defender Act reads:

"(2)(i) Except as provided in subparagraph (ii) of this paragraph, representation shall be provided to an indigent individual in all stages of a proceeding listed in paragraph (1) of this subsection, including, in criminal proceedings, custody, interrogation, bail hearing before a District Court or circuit court judge, preliminary hearing, arraignment, trial, and appeal.

(ii) Representation is not required to be provided to an indigent individual at an initial appearance before a District Court commissioner."

Due to the above-quoted legislative change in the Public Defender Act, some of the parties filed motions asking this Court to decide whether there was a federal or state constitutional right to state-furnished counsel for indigent defendants at their initial appearances before District Court Commissioners. Other parties argued that, before deciding any constitutional issues, this Court should remand the case to the Circuit Court for development of a "fuller factual record based on actual experience under the revised statute." The State of Maryland filed a motion to intervene, and this Court on July 9, 2012, granted the motion.

On August 22, 2012, the Court issued an amended order determining that "a remand for further development of the factual record [was] unnecessary" and that

> "the Court and the parties would benefit from supplemental briefing and additional oral argument on the issue of whether Plaintiffs are entitled, under the recently amended Public Defender Act, to relief on the basis of the right to counsel provided in either or both the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights and/or either or both the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights."

Supplemental briefs by the parties and *amicae* were filed, and the Court has heard additional oral arguments.

Because of the amendment to the Public Defender statute, this Court must decide whether an indigent criminal defendant has a constitutional right to state-furnished counsel at an initial appearance before a District Court Commissioner. We shall hold that, under the Due Process component of Article 24 of the Maryland Declaration of Rights, an indigent defendant has a right to state-furnished counsel at an initial appearance before a District Court Commissioner. We shall not decide whether an indigent defendant, at an initial appearance before a District Court Commissioner, has a right to state-furnished

counsel under the Sixth or Fourteenth Amendments to the Federal Constitution or under Article 21 of the Maryland Declaration of Rights.[9]

## II.

Article 24 of the Maryland Declaration of Rights provides as follows:

"Article 24. Due Process.

---

**9.** Our decision in this case is based *solely* upon the Due Process component of Article 24 of the Maryland Declaration of Rights. *See Michigan v. Long,* 463 U.S. 1032, 1041, 103 S.Ct. 3469, 3476, 77 L.Ed.2d 1201, 1214 (1983). *See also, e.g., Doe v. Dept. of Pub. Safety and Correctional Services,* 430 Md. 535, 547 n. 11, 62 A.3d 123, 130 n. 11 (2013) ("[o]ur judgment is based exclusively upon our interpretation of the protections afforded by . . . Maryland's Declaration of Rights"); *Marshall v. State,* 415 Md. 248, 260, 999 A.2d 1029, 1035 (2010) ("we shall rest our decision, as we have often done in the past, solely upon the Maryland provisions"); *Myer v. State,* 403 Md. 463, 475, 943 A.2d 615, 622 (2008) (the trial court's error was "a violation of Maryland . . . law separate and apart from any rights [the defendant] may have under the Sixth Amendment to the United States Constitution"); *Maryland Green Party v. Maryland Bd. of Elections,* 377 Md. 127, 139, 832 A.2d 214, 221 (2003)(" 'We simply are making it clear that our decision is based exclusively upon the [Maryland Constitution] and is in no way dependent upon the federal [Constitution]' "). *See also Ohio v. Robinette,* 519 U.S. 33, 36–37, 117 S.Ct. 417, 420, 136 L.Ed.2d 347, 353 (1996); *Arizona v. Evans,* 514 U.S. 1, 6–10, 115 S.Ct. 1185, 1189–1190, 131 L.Ed.2d 34, 41–42 (1995).

Furthermore, as this Court has pointed out on numerous occasions, many provisions of the Maryland Constitution, such as Article 24 of the Declaration of Rights, have counterparts in the United States Constitution, and we have said that the Maryland provision is *in pari materia* with its federal counterpart. Nevertheless, we have repeatedly emphasized that

"simply because a Maryland constitutional provision is *in pari materia* with a federal one or has a federal counterpart, does *not* mean that the provision will *always* be interpreted or applied in the same manner as its federal counterpart." *Dua v. Comcast Cable of Maryland, Inc.,* 370 Md. 604, 621, 805 A.2d 1061, 1071 (2002)

This is especially true of Article 24 of the Maryland Declaration of Rights. This Court has held on several occasions that the protections provided under Article 24 are broader than those found in the United States Constitution. *See, e.g., Tyler v. College Park,* 415 Md. 475, 499–500, 3 A.3d 421, 434–435 (2010); *Dua v. Comcast Cable of Maryland, Inc., supra,* 370 Md. at 621, 805 A.2d at 1071 (2002); *Attorney General v. Waldron,* 289 Md. 683, 714, 426 A.2d 929, 946 (1981).

"That no man ought to be taken or imprisoned or dis-
seized of his freehold, liberties or privileges, or outlawed, or
exiled, or, in any manner, destroyed, or deprived of his life,
liberty or property, but by the judgment of his peers, or by
the Law of the land." [10]

The procedural due process component of the Maryland Dec-
laration of Rights' Article 24 has long been construed by this
Court to require, under some circumstances, state-furnished
counsel for indigent defendants. *See, e.g., Coates v. State*, 180
Md. 502, 512, 25 A.2d 676, 680, *cert. denied*, 317 U.S. 625, 63
S.Ct. 33, 87 L.Ed. 506 (1942) ("In these cases now before us,
our conclusion is that counsel should have been appointed as
an essential of due process of law"); *Jewett v. State*, 190 Md.
289, 296–297, 58 A.2d 236, 238 (1948) ("Without attempting to
trace the tenuous line between what does and what does not
constitute due process in this respect, we may say that we
think the wise practice, in any serious case, is to appoint
counsel unless the accused intelligently waives such appoint-
ment"). This interpretation of Article 24 pre-dates, by several
years, the Court's construction of Article 21 to require state-
furnished counsel for criminal defendants.[11]

---

**10.** Prior to 1978, Article 24 of the Declaration of Rights was numbered
Article 23.

**11.** Article 21 of the Declaration of Rights states (emphasis added):
"**Article 21. Rights of accused; indictment; counsel; confrontation;
speedy trial; impartial and unanimous jury.**
"That in all criminal prosecutions, every man hath a right to be
informed of the accusation against him; to have a copy of the
Indictment, or charge, in due time (if required) to prepare for his
defence; *to be allowed counsel;* to be confronted with the witnesses
against him; to have process for his witnesses; to examine the
witnesses for and against him on oath; and to a speedy trial by an
impartial jury, without whose unanimous consent he ought not to be
found guilty."
The wording of the Right–to–Counsel Clause in Article 21 has remained
the same since the Constitution of 1776. Nevertheless, this Court's
interpretation of the Clause has been an evolving process. Throughout
most of our history since 1776, the clause was not construed as
requiring the appointment of counsel for indigents but was "construed
. . . as merely doing away with the common law rule that denied
representation by counsel," *Edwardsen v. State*, 220 Md. 82, 89, 151

The above-cited cases, and similar early cases, did not go so far as holding that indigent defendants had a due process right to state-furnished counsel in any proceeding involving incarceration. Nevertheless, this Court did so hold in *Rutherford v. Rutherford,* 296 Md. 347, 357–364, 464 A.2d 228, 234–237 (1983).[12] In *Rutherford,* two defendants in civil contempt cases were found to be in contempt and were sentenced to jail. Neither defendant was represented by counsel, and neither defendant could afford counsel. This Court initially observed in *Rutherford* that the Sixth Amendment and "Article 21 of the Maryland Declaration of Rights guarantee[d] a right to counsel, including appointed counsel for an indigent, in a criminal case involving incarceration," and that this "right extends to every 'critical stage' of the criminal proceedings." *Rutherford,* 296 Md. at 357–358, 464 A.2d at 234. *Rutherford* went on to observe that the civil contempt proceedings were not stages of criminal proceedings and that, therefore, the Sixth Amendment and Article 21 were not directly applicable.

The Court in *Rutherford* then turned to the requirements of due process, stating (296 Md. at 358, 464 A.2d at 234, emphasis added):

"Nevertheless, the constitutional right to counsel is broader than the specific guarantee of the Sixth Amend-

---

A.2d 132, 136 (1959), and cases there cited. By the 1980s, however, we had taken the position that "[t]here is no distinction between the right to counsel guaranteed by the Sixth Amendment and Art. 21 of the Maryland Declaration of Rights." *State v. Tichnell,* 306 Md. 428, 440, 509 A.2d 1179, 1185, *cert. denied,* 479 U.S. 995, 107 S.Ct. 598, 93 L.Ed.2d 598 (1986). More recently, we have emphasized that the Right–to–Counsel Clause of Article 21 is an "independent Maryland Constitutional provision," and that Supreme Court decisions under the Sixth Amendment would not be binding with regard to the Right–to–Counsel Clause of Article 21. *Perry v. State,* 357 Md. 37, 85–87 and n. 11, 741 A.2d 1162, 1188–1189 and n. 11 (1999).

For a detailed history of Article 21, *see* Judge Wilner's opinions in *Perry v. State, supra,* and *Baldwin v. State,* 51 Md.App. 538, 444 A.2d 1058 (1982).

12. The *Rutherford* opinion, 296 Md. at 364 n. 6, 464 A.2d at 237 n. 6, noted that "[f]or several years the question of whether due process requires the appointment of counsel in cases like the instant ones has been a recurring matter in Maryland trial courts."

ment and Article 21 of the Declaration of Rights. Under certain circumstances, the requirements of due process include a right to counsel, with appointed counsel for indigents, in civil cases *or other proceedings* not constituting critical stages of criminal trials."

The opinion then pointed out that the right to state-furnished counsel for indigents extends "to *civil* juvenile delinquency proceedings because of 'the awesome prospect of incarceration in a state institution,' " *Rutherford, ibid.,* quoting *In re Gault,* 387 U.S. 1, 36–37, 87 S.Ct. 1428, 1449, 18 L.Ed.2d 527, 551 (1967).

The *Rutherford* opinion then reviewed cases throughout the country, pointing out that the majority of jurisdictions held that there was a right to state-furnished counsel for indigents in proceedings like the ones before the Court. This Court also pointed out that there was a minority rule that "special circumstances" were required before the right to counsel attached in such proceedings. *Rutherford* then held as follows (296 Md. at 360–361, 464 A.2d at 235, emphasis added):

"We believe that the majority view is sound. A defendant's *actual incarceration in a jail, as a result of a proceeding at which he was unrepresented by counsel* and did not knowingly and intelligently waive the right to counsel, is fundamentally unfair. As repeatedly pointed out in criminal and civil cases, *it is the fact of incarceration, and not the label placed upon the proceeding, which requires the appointment of counsel* for indigents. With regard to the minority 'special circumstances' rule ..., very often the 'special circumstances' requiring the assistance of counsel are not apparent until the defendant is represented by counsel. Moreover, the deprivation of liberty is itself a 'special circumstance' requiring the assistance of counsel."

The principle set forth in *Rutherford,* that the due process right to counsel under Article 24 of the Declaration of Rights is broader than the right to counsel under Article 21 or the Sixth Amendment has been reaffirmed by the Court on numerous occasions. *See, e.g., Grandison v. State,* 425 Md. 34,

54, 38 A.3d 352, 364 (2012), *cert. denied,* —— U.S. ——, 133 S.Ct. 844, 184 L.Ed.2d 667 (2013) (" 'We recognized in *Rutherford v. Rutherford,* 296 Md. 347, 358, 464 A.2d 228 (1983) that the constitutional right to counsel is broader than the specific guarantee of the Sixth Amendment and Article 21 of the Maryland Declaration of Rights in that, under certain circumstances, the requirements of due process include a right to counsel, with appointed counsel for indigents, in civil cases or other proceedings not constituting stages of criminal trials,' " quoting *Sites v. State,* 300 Md. 702, 717, 481 A.2d 192, 199 (1984)); *Janice M. v. Margaret K.,* 404 Md. 661, 679–680 n. 7, 948 A.2d 73, 83–84 n. 7 (2008) ("We have . . . read Maryland's due process clause more broadly than the federal constitution in granting the right to counsel, *see Rutherford v. Rutherford,* 296 Md. 347, 464 A.2d 228 (1983) "); *Koshko v. Haining,* 398 Md. 404, 444 n. 22, 921 A.2d 171, 194 n. 22 (2007) (same); *Haas v. Lockheed Martin,* 396 Md. 469, 481–482 n. 10, 914 A.2d 735, 742–743 n. 10 (2007) (same); *Lodowski v. State,* 307 Md. 233, 248, 513 A.2d 299, 307 (1986) ("Article 24 . . . ha[s] long been recognized as a source of a right to counsel independent of the Sixth Amendment where critically important to the fairness of the proceedings. . . . *See Rutherford v. Rutherford,* 296 Md. 347, 464 A.2d 228 (1983) ") (internal quotation marks omitted).

Moreover, regardless of whether the source of an indigent defendant's right to state-furnished counsel was Article 24 or Article 21 of the Declaration of Rights, we have reaffirmed that the right attaches in any proceeding that may result in the defendant's incarceration. *See, e.g., Zetty v. Piatt,* 365 Md. 141, 156, 776 A.2d 631, 639 (2001) (Applying *Rutherford,* the Court reversed a contempt judgment because the indigent defendant was denied the right to appointed counsel in a civil contempt proceeding); *Vincenti v. State,* 309 Md. 601, 604, 525 A.2d 1072, 1074 (1987) (Constitutional right to counsel attaches to probation revocation proceedings which are civil proceedings in Maryland); *Parren v. State,* 309 Md. 260, 262, 523 A.2d 597, 598 (1987); *Lodowski v. State, supra,* 307 Md. at 248, 513 A.2d at 308 (Reiterates that " 'an indigent defendant in a civil

contempt proceeding cannot be sentenced to ... incarceration unless counsel has been appointed to represent him or he has waived the right to counsel' "); *Williams v. State,* 292 Md. 201, 218, 438 A.2d 1301, 1309 (1981) (There is an "absolute right of counsel if there is a danger of incarceration"); *State v. Bryan,* 284 Md. 152, 158 n. 5, 395 A.2d 475, 479 n. 5 (1978) ("[I]t would be hard to gainsay that a probationer in a Maryland revocation proceeding would not now be entitled to appointed counsel" as a matter of due process).

 Section 16–204(b)(2)(i) of the amended Public Defender Act does grant an indigent defendant a right to state-furnished counsel at a bail *review* hearing before a *judge.* This provision, however, does not rectify the constitutional infirmity of not providing counsel for an indigent defendant at the initial proceeding before a Commissioner. As a matter of Maryland constitutional law, where there is a violation of certain procedural constitutional rights of the defendant at an initial proceeding, including the right to counsel, the violation is not cured by granting the right at a subsequent appeal or review proceeding.

Thus, in *Zetty v. Piatt, supra,* 365 Md. at 155–160, 776 A.2d at 639–642, the indigent defendant was denied his right to state-furnished counsel at a civil contempt proceeding, but, in a later hearing after the defendant filed a motion for reconsideration, the defendant was represented by counsel. This Court, in an opinion by Judge Cathell, first held that, under *Rutherford,* the defendant was denied due process of law at the initial hearing when the defendant was unrepresented by counsel. Turning to the reconsideration proceeding, Judge Cathell for the Court held as follows (365 Md. at 161, 776 A.2d at 642–643):

> "If a person's right to counsel is violated at trial, that violation is not cured by providing the person with counsel for their appeal. * * * Likewise, generally, if a person has his or her right to counsel violated at a contempt hearing, it is not cured by having counsel at a subsequent reconsideration hearing."

*See Reed v. Foley,* 105 Md.App. 184, 196–197, 659 A.2d 325, 331–332 (1995) (The court held that the denial of the due process right to counsel at a hearing before a master was not cured by providing the defendant counsel at the exceptions hearing before a judge). *See also Kawamura v. State,* 299 Md. 276, 291–292, 473 A.2d 438, 446–447 (1984) (Denial of the right to a jury trial in the District Court was not cured by providing a jury trial at a *de novo* appeal in a circuit court); *Danner v. State,* 89 Md. 220, 226, 42 A. 965 (1899).

Furthermore, this Court's January 4, 2012, opinion pointed to some of the problems when defendants are unrepresented by counsel at initial bail hearings, some of the benefits when defendants have counsel at the initial hearings, and what often occurs at bail review hearings:

"We detailed at the outset of this opinion the process by which the Commissioner must determine, by reference to a number of fact-laden considerations listed in Rule 4–216(d), whether the defendant is to be released on his or her own recognizance or incarcerated until further consideration by a District Court judge at a subsequent bail review hearing. *See* Rules 4–213(a), 4–216.[13] The presence of counsel for that determination surely can be of assistance to the defendant in that process. We are informed by the Plaintiffs that '[u]nrepresented suspects are more likely to have more perfunctory hearings, less likely to be released on recognizance, more likely to have higher and unaffordable bail, and more likely to serve longer detentions or to pay the expense of a bail bondsman's non-refundable 10% fee to regain their freedom."

\*　　\*　　\*

"That a defendant *might* have bail reduced or eliminated by a District Court judge at a subsequent bail review hearing does not dispel or even mitigate the fact that, whenever a Commissioner determines to set bail, the defendant stands a good chance of losing his or her liberty, even

---

**13.** The considerations previously listed in Maryland Rule 4–216(d) are now found in Rule 4–216(f).

if only for a brief time. Furthermore, the likelihood that the Commissioner will give full and fair consideration to all facts relevant to the bail determination can only be enhanced by the presence of counsel. *See* Abell Pretrial Release Project Report at iii (finding that 'most judicial officers decide whether to order release on recognizance or a financial bail without having essential information about the person's employment status, family and community ties, and ability to afford bail'). We cannot overlook, moreover, the evidence in the record that the Commissioner's initial bail decision often is not disturbed by the District Court judge on bail review. *See id.* at 32 (finding that, at bail review, District Court judges in the sample group maintained prior bail conditions in roughly half the cases, released only 25% of detainees on personal recognizance, and lowered bail for only one in four individuals (27%)). Whenever the Commissioner's bail decision is left standing, the defendant will remain incarcerated for weeks, if not many months, before trial." (footnote omitted)

■ At a defendant's initial appearance before a District Court Commissioner pursuant to Maryland Rule 4–213, the defendant is in custody and, unless released on his or her personal recognizance or on bail, the defendant will remain incarcerated until a bail review hearing before a judge.[14] Consequently, we hold that, under Article 24 of the Maryland Declaration of Rights, an indigent defendant is entitled to state-furnished counsel at an initial hearing before a District Court Commissioner.[15]

---

**14.** If a defendant is charged with certain serious offenses, Rule 4–216(d) prohibits the defendant's release by a Commissioner.

**15.** Some of the parties, in their supplemental briefs and oral arguments, have couched the issue in this case as whether the amended Public Defender Act, in § 16–204(b)(2)(ii), is unconstitutional. That, however, is not the issue. We are not at this time holding any provision of the amended Public Defender Act unconstitutional. Our holding is that an indigent defendant is entitled to state-furnished counsel at an initial appearance before a District Court Commissioner. If the other branches of government decide that compliance with this holding is to

JUDGMENT OF THE CIRCUIT COURT FOR BALTI-MORE CITY, EXCEPT FOR THE DECLARATORY JUDG-MENT, AFFIRMED FOR THE REASONS SET FORTH IN OUR OPINION AND ORDER OF JANUARY 4, 2012. DECLARATORY JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY VACATED AND CASE RE-MANDED TO THE CIRCUIT COURT FOR THE ENTRY OF A DECLARATORY JUDGMENT IN ACCORDANCE WITH THIS OPINION. COSTS TO BE PAID BY THE STATE OF MARYLAND.

BARBERA, C.J., HARRELL and ADKINS, JJ., dissent.

BARBERA, C.J., dissenting, which HARRELL and ADKINS, JJ., join.

Respectfully, I dissent. The majority holds that, "under Article 24 of the Maryland Declaration of Rights, an indigent defendant is entitled to state-furnished counsel at an initial hearing before a District Court Commissioner." Maj. Op. at 464, 76 A.3d at 1031. Certainly, such a right to counsel existed under a previous iteration of Maryland's Public Defender Act. *See DeWolfe v. Richmond,* 434 Md. 403, 76 A.3d 962, 2012 WL 10853 (2012) (*"Richmond I "*); Md. Code (2001, 2008 Repl. Vol.), § 16–204(b)(2) of the Criminal Procedure Article.[1] I do not agree with the majority that the due process protection afforded under Article 24 of the Maryland Declaration of Rights requires a right to counsel at that hearing.[2] That is particularly so given the statutory and rule

be accomplished by means other than Public Defender representation at initial appearances before Commissioners, they are, of course, free to do so.

**1.** The General Assembly, in response to *Richmond I,* amended the Act such that representation by the Public Defender at the initial appearance before a Commissioner is no longer required. Md. Code (2001, 2008 Repl. Vol., 2012 Supp.), § 16–204(b)(2)(ii) of the Criminal Procedure Article.

**2.** The majority declines to consider whether an indigent defendant has a right to counsel under the Sixth or Fourteenth Amendments to the United States Constitution or Article 21 of the Maryland Declaration of Rights. Maj. Op. at 456–57, 76 A.3d at 1026. Because the majority

changes that have been implemented in response to Richmond I.

Article 24 of the Maryland Declaration of Rights requires that "no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." Article 24 and the Fourteenth Amendment to the United States Constitution have "long been recognized as a source of a right to counsel independent of the Sixth Amendment where critically important to the fairness of the proceedings." *Lodowski v. State*, 307 Md. 233, 248, 513 A.2d 299 (1986) (quoting *Sites v. State*, 300 Md. 702, 716, 481 A.2d 192 (1984)). I do not quarrel with the majority's recitation of those cases in which we have stated that Article 24 applies in a broader manner than the Fourteenth Amendment. I do part company with the majority's conclusion that Article 24 dictates a right to counsel at the initial bail hearing before a District Court Commissioner.

In *Rutherford v. Rutherford*, 296 Md. 347, 464 A.2d 228 (1983), this Court stated:

> A defendant's actual incarceration in a jail, as a result of a proceeding at which he was unrepresented by counsel and did not knowingly and intelligently waive the right to counsel, is fundamentally unfair. As repeatedly pointed out in criminal and civil cases, it is the fact of incarceration, and not the label placed upon the proceeding, which requires the appointment of counsel for indigents.

*Id.* at 360–61, 464 A.2d 228.

The majority seizes upon this language and seems to extrapolate from it to hold that the type of "proceeding" addressed in *Rutherford*—a court hearing at which an indigent person, unrepresented by counsel, is incarcerated by court order upon

---

does not consider the claim under the Sixth Amendment or its Maryland counterpart, Article 21, I shall not analyze those grounds and will limit my dissent to the procedural due process claim.

a judicial finding of civil contempt—is the equivalent, for purposes of Article 24, of the initial appearance before a District Court Commissioner. The majority bolsters this notion by invocation of other cases in which this Court has stated and/or held, by resort to the Maryland Declaration of Rights, that a person is entitled to counsel if there is a threat of incarceration.[3] *See Zetty v. Piatt,* 365 Md. 141, 156, 776 A.2d 631 (2001); *Vincenti v. State,* 309 Md. 601, 604, 525 A.2d 1072 (1987); *State v. Bryan,* 284 Md. 152, 158 n. 5, 395 A.2d 475 (1978). There is a fundamental distinction between those cases and the case at bar.

In all of the cases cited by the majority, the proceedings at issue were, to the last, in-court proceedings, conducted by a judge and having the potential to result in a judge-ordered term of incarceration that was final, save for the possibility of a subsequent court proceeding at which the defendant would have the right to counsel. The initial appearance before a District Court Commissioner has none of those features.

Under the current iteration of the Public Defender Act, related statutory provisions, and applicable Rules of Procedure, the initial appearance before the Commissioner involves the following. The Commissioner evaluates whether there was probable cause for an arrest, determines whether a defendant should be released and what conditions should accompany any release, and informs a defendant of his or her right to counsel. Maryland Code (1973, 2013 Repl. Vol.), § 2–607(c) of the Courts and Judicial Proceedings Article ("CJ"). The Commissioner must make a written record of the probable cause determination and commit to writing all communications between the Commissioner and the parties, including the State's Attorney's Office. Rule 4–216(a) and (b). Further-

---

**3.** The majority cites three additional cases, *Parren v. State,* 309 Md. 260, 262, 523 A.2d 597 (1987); *Lodowski v. State,* 307 Md. 233, 248, 513 A.2d 299 (1986); *Williams v. State,* 292 Md. 201, 218, 438 A.2d 1301 (1981), for the same proposition. Those cases stated the proposition, but none involved the initial question of whether the defendant had the right to counsel; rather, each involved the question of whether the defendant had properly waived that right.

more, any statements made by a defendant during the Commissioner hearing cannot be used against him or her in later proceedings. CJ § 10–922. There is a presumption at the Commissioner hearing that a defendant will be released on personal recognizance or bail unless the Commissioner determines that there are no conditions of release that can be imposed that will ensure the appearance of the defendant at a later proceeding or the safety of the victim or community at large. Rule 4–216(c). Defendants who are denied pretrial release entirely or remain in custody after the hearing because they cannot afford the bail amount set "shall be presented immediately to the District Court if the court is then in session, or if not, at the next session of the court." Rule 4–216.1(a)(1). At those court hearings,[4] the Public Defender's Office is required to provide representation for an indigent defendant.[5] Rule 4–216. 1(a)(2)(A).

The initial bail hearing before a Commissioner does not result in a final determination of incarceration because no decision made by a Commissioner will lead to a defendant's languishing in custody without judicial review. Indeed, the law affirmatively requires that the Commissioner's initial bail decision be reviewed quickly by a judge, at a formal, in-court proceeding, at which every defendant—indigent or not—is

---

**4.** The Public Defender has asked this Court to make clear under what standard of review a District Court judge reviews the initial bail determination made by a Commissioner. In *De Wolfe v. Richmond*, 434 Md. 403, 430 n. 22, 76 A.3d 962, 2012 WL 10853, *12 n. 22 (2012) (*"Richmond I"*), we stated in a footnote: "We emphasize that District Court judges owe no deference to the Commissioners' initial bail determinations." The Public Defender asks that this Court "reaffirm that statement" by making such a holding explicit. To the extent that there was any confusion on this point, I would reaffirm that a District Court judge reviews a Commissioner's initial determination *de novo* and owes no deference to the decision.

**5.** The General Assembly appropriated $5.4 million to the Public Defender's Office to ensure that it could provide representation at all bail review hearings. Previously, the Public Defender provided representation at some, but not all, bail review hearings in the state. According to the Public Defender, it now represents indigent defendants at all bail review hearings, but does not provide representation at the initial hearing before District Court Commissioners.

entitled to representation by counsel. The very fact of speedy review of the Commissioner's preliminary determination, by a judge at a formal court proceeding where defense counsel can argue against the Commissioner's initial bail decision, negates any realistic concern about unfair procedural process. *See Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) (concluding that "a detention of three days over a New Year's weekend does not and could not amount" to a deprivation of due process).

Although decided under the Fourth Amendment, I find instructive the Supreme Court's reasoning in *County of Riverside v. McLaughlin,* 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). In *McLaughlin,* the Court examined whether a county's decision to combine probable cause determinations with arraignment violated the Fourth Amendment's requirement that warrantless arrests be followed by a prompt judicial determination of probable cause. *Id.* at 47, 111 S.Ct. 1661. The Court concluded that a probable cause hearing must occur within 48 hours of arrest, and any hearings that take place within this time frame are presumptively constitutional. *Id.* at 57, 111 S.Ct. 1661. The Court described this outcome as "a reasonable accommodation between legitimate competing concerns." *Id.* at 57–58, 111 S.Ct. 1661.

I view the current Maryland bail-review system as a similar "reasonable accommodation between legitimate competing concerns." The procedure allows for a quick assessment, by a neutral party, of whether the arrestee should, or should not, be released on his or her recognizance or upon satisfying a reasonable bail amount; the procedure further requires a formal judicial review of that initial determination, as soon as practicable, at which the defendant is entitled to the full benefits of counsel. The Commissioner hearing, combining a probable cause hearing with an initial bail determination, is designed to "minimize the time a presumptively innocent individual spends in jail." *See id.* at 58, 111 S.Ct. 1661. In some cases, a Commissioner will either find probable cause lacking and release an arrestee, or determine that probable cause exists and allow an arrestee to be free pending trial, or

to post a nominal bail amount. If that does not occur, the Commissioner's decision will be reviewed immediately by a District Court judge, and the arrestee will have the benefit of counsel to plead his or her case. This practice properly addresses the constitutional concerns.[6]

The changes adopted by the majority today will assuredly alter the Commissioner hearing from an informal process into a mini-trial, all of which can be repeated again before a District Court judge within 24 hours if the outcome is not favorable to the defendant.[7] I fear that these changes will prolong—not diminish—the time a defendant spends in custody prior to bail review by the District Court. I agree with the State that the Commissioner hearing, as it now stands, is "straightforward, guided by rule, and of limited duration," typically occurring "in the absence of opposing counsel" and under rules that "provide adequate substitute procedural safeguards." I would hold that such a proceeding does not violate procedural due process under Article 24 of the Maryland Declaration of Rights.

Judges Harrell and Adkins have authorized me to state that they join in the views expressed in this dissenting opinion.

------

**6.** The majority cites, at length, the language in *Richmond I*, 434 Md. at 427–31, 76 A.3d at 976–78, in which this Court wrote about the potential for defendants to lose their liberty in a Commissioner hearing and the potential benefit of counsel for defendants in that process. I do not disagree that counsel could be of assistance at a Commissioner hearing, but the question is not whether assistance would be beneficial, but rather whether it is constitutionally compelled. Moreover, the concerns expressed in the earlier iteration of this case came at a time when a defendant did *not* have the right to counsel at a bail review hearing in District Court. At that point, defendants could spend "weeks, if not many months," incarcerated prior to trial without having had counsel argue on their behalf. That concern is no longer present under current Maryland law.

**7.** The State notes that the General Assembly considered a multitude of factors in deciding not to require counsel at the initial hearing stage. These include the high monetary cost, the logistical and practical difficulties inherent in providing counsel at that early of a stage, concerns of public safety, and "the fact that many arrestees are released at this stage, without assistance of counsel."

## ORDER

WHEREAS, this Court filed an opinion and judgment in this case on January 4, 2012. Absent a timely petition for reconsideration, this Court's mandate would have issued on February 3, 2012, pursuant to Maryland Rule 8–606(b). Timely petitions for reconsideration of the January 4, 2012 decision were filed, along with motions to stay the Court's mandate. Consequently, on March 16, 2012, this Court stayed its mandate pending a decision on the petitions for reconsideration. Subsequently, memoranda were filed and oral argument was held on issues raised in the petitions for reconsideration, and

WHEREAS, this Court, on September 25, 2013, rendered an opinion and judgment on the motions for reconsideration. Therefore, the stay of mandate pending a decision on the petitions for reconsideration expired when that decision was rendered on September 25, 2013. This Court's mandate was issued on October 17, 2013, and

WHEREAS, the State of Maryland on October 23, 2013 filed in this Court a "MOTION TO RECALL MANDATE," stating that it "reasonably expected that the mandate would not issue before" the expiration of 30 days after the filing of the Court's September 25, 2013 opinion. Actually, as the above-recitation of the facts shows, the mandate had been stayed much longer than 30 days, and the stay of the mandate pending a decision on the motions for reconsideration expired on September 25, 2013, and

WHEREAS, the State of Maryland on October 25, 2013 filed in this Court a "MOTION FOR RECONSIDERATION" of this Court's September 25, 2013 decision re-arguing the merits of the September 25th decision. Also on October 25, 2013, the State of Maryland filed in this Court a "MOTION FOR STAY OF ENFORCEMENT OF THE JUDGMENT," contending that, for various reasons, more time is needed for the State government to comply with this Court's September 25, 2013 decision, it is this 6th day of November, 2013

ORDERED, by the Court of Appeals of Maryland, a majority of the Court concurring, that the State's motions to recall

the mandate, for reconsideration, and for stay of enforcement of the judgment be, and they are hereby denied. This Court's September 25th decision only directed the Circuit Court for Baltimore City to enter a declaratory judgment in accordance with the Court's opinion. No other form of relief was then involved. Under the Maryland Declaratory Judgments Act, a declaratory judgment simply "declare[s] rights, status, [or] other legal relations," Maryland Code (1974, 2013 Repl.Vol.), § 3–403(a) of the Courts and Judicial Proceedings Article. The State of Maryland's arguments concerning the time needed to comply with the declaratory judgment ordered by the Court's September 25, 2013 decision, as well as any arguments by other parties, may be made in the Circuit Court if, and when, any party files in the Circuit Court an application for "Further relief based on [the] declaratory judgment," § 3–412(a) of the Declaratory Judgments Act. *See, e.g., Nova v. Penske,* 405 Md. 435, 458–461, 952 A.2d 275, 289–291 (2008); *Bankers & Ship. Ins. v. Electro Enterprises,* 287 Md. 641, 652–653, 415 A.2d 278, 285 (1980).